UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: | Chapter 11 |
| Toys "R" Us Property Company I,<br>    LLC, *et al.*, | Case No. 18-31429-KLP<br>Jointly Administered |
| Debtors. | |

## MEMORANDUM OPINION

Before the Court is the objection of Market Plaza Limited Partnership (Market Plaza) to the Propco I Debtors'[1] proposed assumption and assignment of a lease with Market Plaza (the "Objection"). Market Plaza objects to the Propco I Debtors' proposed assignment of the lease to Ollie's Bargain Outlet. The Court conducted an evidentiary hearing on the Objection on December 11, 2018. At the conclusion of the hearing, the Court took the matter under advisement. Following are the Court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 7052.

## Factual and Procedural Background

The parties stipulated to certain undisputed facts and exhibits (the "Stipulations")[2] that include the following procedural history. On March 20,

---

[1] An order was entered on April 24, 2018, directing the procedural consolidation and joint administration only of the chapter 11 cases of: Toys "R" Us Property Company I, LLC, Case No. 18-31429-KLP; MAP Real Estate, LLC, Case No. 18-31430-KLP; TRU 2005 RE I, LLC, Case No. 18-31431-KLP TRU 2005 RE II Trust, Case No. 18-31432-KLP; Wayne Real Estate Company, LLC, Case No. 18-31433-KLP, and Wayne Real Estate Holding Company, LLC, Case No. 18-31428-KLP (hereinafter jointly referred to as the "Propco I Debtors"). Dkt. 94.
[2] Dkt. 883.

2018, the Propco I Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, in the United States Bankruptcy Court for the Eastern District of Virginia.  The Court ordered the joint administration of the Propco I Debtors' Chapter 11 cases on April 24, 2018.

On August 24, 2018, the Propco I Debtors filed the "Motion for Entry of an Order (I) Establishing Bidding Procedures for the Propco I Leases, (II) Approving the Sale of the Propco I Leases, and (III) Granting Related Relief" (the "Bidding Procedures Motion"),[3] which requested that the Court approve the bidding procedures set forth therein (the "Bidding Procedures").  On September 13, 2018, the Court entered the "Order (I) Establishing Bidding Procedures for the Propco I Leases and (II) Granting Related Relief" (the "Bidding Procedures Order).[4]  The Bidding Procedures Order approved the Bidding Procedures in their entirety and permitted the Propco I Debtors to hold an auction (the "Auction") of several commercial leases (the "Propco I Leases"), with the Auction to be conducted on September 27, 2018.

Market Plaza, the objecting landlord, is an Arkansas limited partnership that serves as the landlord for a total of thirteen tenants who lease certain real property (the "Shopping Center") located in North Little Rock, Arkansas.  The parties agree that the Shopping Center constitutes a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code,

---

[3] Dkt. 455.
[4] Dkt. 519.

2

11 U.S.C. § 365(b)(3).[5]  There are twelve permanent tenants and one seasonal
tenant (Spirit Halloween) occupying the Shopping Center: (1) Toys "R" Us; (2)
S&W Western Wear; (3) Men's Wearhouse; (4) Jason's Deli; (5) Petco; (6)
Leslie's Poolmart; (7) Best Buy ("Best Buy"); (8) Springhill Wine & Liquor; (9)
Paul Mitchell; (10) Work Wear Boots; (11) Big Lots ("Big Lots"); (12) G4L; and
(13) a seasonal tenant (collectively, the "Tenants.  Out of all of the Tenants,
Toys "R" Us has been leasing from Market Plaza in the Shopping Center for
the longest amount of time.

General Properties, Inc. and Handy Dan Home Improvement Centers,
Inc., predecessors in interest to Market Plaza and Toys,[6] respectively, entered
into the lease for the space housing the Toys "R" Us store on July 25, 1980
(the "Toys Lease").[7]  The Propco I Debtors identify the space that is the
subject of the Toys Lease as Store No. 7818 (the "Toys Premises").  The
parties have stipulated that the Toys Lease is considered a Propco I Lease
and that the Toys Lease is a "lease of real property" as that term is used in
§ 365(b)(3).

On September 25, 2018, the Propco I Debtors filed a "Notice of
Qualified Bidders," stating, among other things, that Scandinavian Designs,

[5] All subsequent references to § 365 and any subpart thereof are to 11 U.S.C. § 365.
[6] While the Toys Lease was initially executed in 1980, it has been amended multiple
times. The "Seventh Amendment to Lease" was executed on April 20, 2010, and
appears to be the most recent amendment. The signatories to the Seventh
Amendment were Market Plaza and TRU 2005 RE I, LLC, one of the Propco I
Debtors. The Court refers to the various non-landlord signatories (other than Handy
Dan Home Improvement Centers, Inc., and its successors and assigns) to the Toys
Lease as "Toys."
[7] The Stipulations mistakenly state July 25, 2018, as the date of the Toys Lease.

3

Inc., was the qualified bidder for the Toys Premises.[8]  On September 27,

pursuant to the Bidding Procedures Order, the Propco I Debtors conducted

the Auction with respect to certain Propco I Leases, including the Toys Lease.

On September 28, the Propco I Debtors filed their "Notice of Successful and

Backup Bidder with Respect to the Auction of Certain of the Propco I Debtors'

Leases."  That notice stated that Ollie's Bargain Outlet, Inc. ("Ollie's") was

the successful bidder for the Toys Lease.  Ollie's successful bid was listed at

$300,000, and the cure amount was listed at $36,571.31.  There was no

backup bidder listed.[9]  Market Plaza timely filed the Objection on October 5,

2018.

## Analysis and Additional Factual Findings

### *Positions of the parties*

Market Plaza claims that assignment of the Toys Lease to Ollie's is

impermissible because the Propco I Debtors cannot provide adequate

assurance of future performance as required by § 365(b)(3) and § 365(f)(2) of

the Bankruptcy Code.  Market Plaza asserts that there is an intended tenant

mix at the Shopping Center that caters to the needs of higher-income

customers.  According to Market Plaza, the Toys Lease first established this

tenant mix by including lease restrictions forbidding certain types of tenants.

Market Plaza urges that while the Toys Lease is the first, and most notable,

of its tenant leases to include such restrictions, additional use and exclusivity

---

[8] Dkt. 553.
[9] Dkt. 579.

provisions in the leases of other Tenants further establish the intended tenant mix and master plan for the Shopping Center's development.[10]   It contends that an assignment to Ollie's would contravene these use restrictions and disrupt the tenant mix, in violation of § 365(b)(3)(D).  Market Plaza also maintains that Ollie's intended use of the premises would breach use restrictions contained in the Toys Lease and the leases of other Tenants, in violation of § 365(b)(3)(C).

The Propco I Debtors have responded to the Objection by pointing out that the Toys Lease predates all the other Tenants' leases and arguing that they cannot be bound by provisions contained in other leases to which they did not agree.  They add that there is no language in the Toys Lease regarding an intended tenant mix and no master agreement for the Shopping Center that would evidence one.  The Propco I Debtors maintain that Market Plaza has not established that an intended tenant mix exists and, even if the Court were to find that one does exists, the addition of Ollie's as a tenant would not disrupt it.  Accordingly, the Propco I Debtors dispute the assertion that § 365(b)(3)(C) and § 365(b)(3)(D) prohibit the assignment.  They also point out that if the assignment is not approved, they will lose the $300,000 bid by Ollie's for the Toys Lease because there is no backup bidder.[11]

---

[10] *See* Market Plaza's Proposed Findings of Facts and Conclusions of Law (Dkt. 927, at 7-8).
[11] Dkt. 579.  Market Plaza did not bid at the Auction. Tr. 47:22-25.

*Jurisdiction*

This Court has subject matter jurisdiction pursuant to 28 U.S.C.

§§ 157(a) and 1334(b) and the general order of reference for the U.S. District

Court for the Eastern District of Virginia dated August 15, 1984.  This is a

core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).

*Section 365(b)(3)(C)*

A party wishing to assign a lease must provide adequate assurance of

future performance of such lease.  11 U.S.C. § 365(f)(2).  Section 365(b)(3)(C)

specifies that adequate assurance of future performance for a lease of real

property in a shopping center must include assurance that the "assumption

or assignment of such lease is subject to all the provisions thereof, including

(but not limited to) provisions such as a radius, location, use, or exclusivity

provision, and will not breach any such provision contained in any other

lease, financing agreement, or master agreement relating to such shopping

center."  The Fourth Circuit has held that § 365(b)(3)(C) generally "requires

the assignee of a shopping center lease to honor a clause restricting the use of

the premises." *Trak Auto Corp. v. West Town Ctr. LLC* (*In re Trak Auto

Corp.*), 367 F.3d. 237, 243 (4th Cir. 2004).  However, the Fourth Circuit also

stated that the purpose of § 365(b)(3)(C) "is to preserve the landlord's

bargained-for protections with respect to premises use and other matters *that

are spelled out in the lease with the debtor-tenant*." *Id*. at 244 (emphasis

added).  In *Trak*, the Fourth Circuit emphasized that it is the lease between

6

lessor and the debtor that establishes these "bargained-for protections."[12]  *See also Brea Union Plaza, I, LLC v. Toys "R" Us, Inc.*, No. 3:18cv419, 2018 WL 3543056, at *3. (E.D. Va. July 23, 2018).

Market Plaza claims that the Propco I Debtors cannot offer adequate assurance of future performance because Ollie's intended use of the premises would violate use restrictions contained in the Toys Lease, the lease of Big Lots (the "Big Lots Lease"), the lease of Best Buy (the "Best Buy Lease"), and the leases of other Tenants.  Essentially, Market Plaza seeks to have the Court find that Ollie's must adhere not only to the restrictions contained in the Toys Lease but also those included in leases executed by *other* Tenants *after* the execution of the Toys Lease.

**The Toys Lease**.  The Toys Lease provides that it may be assigned without the consent of the landlord.[13]  Paragraph 3.1 of the rider to the Toys Lease prohibits the Toys Premises from being used for purposes of conducting

---

[12] In *Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 244 (4th Cir. 2004), the court cited *In re Ames Dep't Stores, Inc.*, 121 B.R. 160, 165 n.4 (Bankr. S.D.N.Y. 1990), which pointed out the 1984 amendments to § 365. It analyzed that "[t]he purpose of the amendments was to ensure the lessor and other tenants [maintain] the benefit of the *original* bargain with the debtor.  This legislative history clearly shows that Congress intended Section 365(b)(3) to preserve a landlord's bargained-for protections expressed in the terms of the lease and related agreements."  *Id*. (internal citation omitted) (emphasis in original).  The court further voiced concern that Section 365(b)(3) could "be transformed from a shield protecting a landlord's pre-bankruptcy rights into a sword allowing a landlord to create unilaterally various contractual provisions, i.e., a use clause, where none existed prior to bankruptcy." *Id*.

[13] Market Plaza Ex. 10, at 11.

the business of a bowling alley, discotheque, night club, theatre, or skating rink.[14]  Ollie's does not intend to engage in one of these prohibited businesses.

The Toys Lease was amended in April of 1988, apparently in anticipation of its assignment to Toys.  At that time, language was included to maintain Toys generally as the Shopping Center's exclusive seller of toys and children's clothing.[15]

Beginning with the Third Amendment to the Toys Lease in November of 1999, additional language was added to the Toys Lease, prohibiting Market Plaza from permitting any *other* premises in the shopping center to be used for certain purposes including "a store conducting sales of closeout, bankruptcy, fire, damaged, or floor sample merchandise . . . ."[16]  Market Plaza argues that the proposed assignment to Ollie's would violate these use restrictions.  This argument fails.

The restrictions contained in the Third Amendment are applicable only to *other* premises in the Shopping Center, not the Toys Premises.[17]  As the Fourth Circuit held in *Trak Auto*, § 365(b)(3)(C) requires an assignee to honor clauses in the lease restricting the use of "the premises" and preserves the landlord's protections with respect to "premises use."  367 F.3d. at 243-44.  The operation of an Ollie's store will not violate any restrictions in the Toys

---

[14] *Id*. at 16.  This prohibition also applies to assignees of the tenant.  *Id*. at 32.
[15] *Id*. at 55.  This exclusivity provision applies only so long as Toys "R" Us and/or Kids "R" Us uses the Toys Premises as a toy store or children's clothing store.  *Id*. at 64.
[16] *Id*. at 66.
[17] *Id*. at 65-66.

Lease governing the use of the Toys Premises, the location where Ollie's

would be conducting business.

Moreover, there is no indication in the Toys Lease that the language

cited by Market Plaza to support its claim that Ollie's proposed use of the

Toys Premises is prohibited was meant to implement a master plan to

preserve a certain tenant mix for the Shopping Center, nor has Market Plaza

presented extraneous evidence that this was the intent of the language.  The

intended purpose of these additional use restrictions was to accommodate

Toys.  This is evident from the history of dealings between Market Plaza and

Toys, beginning with the original lease dated July 25, 1980, and culminating

with the Seventh Amendment dated April 20, 2010,[18] as documented by the

only evidence in the record, the Toys Lease and its amendments.

The Toys Lease was amended numerous times to permit Market Plaza

to lease other locations in the Shopping Center to tenants whose use may

have violated restrictions designed to protect the Toys business model.  On

these occasions, Toys typically extracted concessions from Market Plaza,

including additional or modified restrictions.[19]  There is no language in the

amendments suggesting that any of the restrictions added to the Toys Lease

were intended to implement a master plan for the Shopping Center or were

---

[18] The Seventh Amendment to the Toys Lease permitted Market Plaza to lease a
portion of the Shopping Center to Big Lots, a discount retailer whose use is
essentially the same as Ollie's intended use.  Market Plaza Ex. 10, at 106.
[19] For example, the Fifth Amendment to the Toys Lease, dated March 5, 2004,
provided that Market Plaza would pay $25,000 to Toys in exchange for a waiver of
the use restrictions to enable Market Plaza to secure Best Buy as a tenant.  Market
Plaza Ex. 10, at 84.

meant to secure additional bargained-for protections that would achieve or maintain a particular tenant mix.  Rather, their purpose was to grant the landlord waivers from use restrictions benefitting only Toys; Market Plaza obtained the waivers from Toys in order to add tenants whose use of the Shopping Center was at odds with those restrictions.[20]

Ollie's intended use of the Toys Premises does not violate the provisions of the Toys Lease cited by Market Plaza, which addressed only the use of other premises in the Shopping Center and not the Toys Premises. The use restrictions contained in the Toys Lease were meant to protect Toys, not Market Plaza.  The Court finds that § 365(b)(3)(C) does not prohibit an assignment of the Toys Lease to Ollie's.

**The Big Lots Lease, the Best Buy Lease and other Leases.**  None of the leases of other Tenants, including the Big Lots Lease and Best Buy Lease, pre-date or otherwise are incorporated into the Toys Lease. Nevertheless, Market Plaza contends that under § 365(b)(3)(C), the Propco I Debtors are bound by the restrictions contained in these leases.  This Court rejected the same argument in *In re Toys "R" Us, Inc*., 587 B.R. 304 (Bankr. E.D. Va. 2018), after concluding that the intent of § 365(b)(3)(C) is not to provide landlords with contractual rights extracted from subsequent leases with other tenants but to preserve the landlord's bargained-for protections. *Id*. at 309-10.  The District Court affirmed this decision on appeal. *Brea*

---

[20] Ms. De Saint Felix:  "[T]oys "R" Us is the main one that we have in there, showing the type of other tenants they do not want in the center, that they feel will not be helpful to their - - to their particular product."  Tr. 32:21-24.

*Union Plaza, I, LLC v. Toys "R" Us, Inc.*, No. 3:18cv419, 2018 WL 3543056

(E.D. Va. July 23, 2018).  The instant case is not distinguishable from *Brea*.[21]

The Big Lots Lease, the Best Buy Lease and the other Tenant leases

are not subject to the requirements of § 365(b)(3)(C) because all of them were

executed after the Toys Lease.  Therefore, the Court finds that the leases of

the other Tenants do not prohibit an assignment of the Toys Lease to Ollie's

pursuant to § 365(b)(3)(C).

*Section 365(b)(3)(D)*

Section 365(b)(3)(D) of the Bankruptcy Code provides that "adequate

assurance of future performance of a lease of real property in a shopping

center includes adequate assurance . . . that assumption or assignment of

---

[21] The Big Lots restriction includes an exception for "tenants open and operating for business in the Shopping Center as of the date of this Lease (or their assignees under those leases existing as of the date hereof)."  Market Plaza Ex. 2, at 8.  The parties offer different interpretations of this language, with the Propco I Debtors asserting that the language "existing as of the date hereof" refers to "leases" rather than "assignees."  Under the Propco I Debtors' interpretation, they would be exempt from the restriction.  Even though the Propco I Debtors are not a party to the Big Lots Lease, their interpretation is consistent with the parties' understanding as set forth in the Toys Lease.  The Letter Agreement between Market Plaza and Best Buy, which is incorporated into the Fifth Amendment to the Toys Lease dated March 5, 2004, includes the following:

> In the event that Landlord and Best Buy enter into the Best Buy Lease, notwithstanding anything in the Best Buy Lease to the contrary, for so long as the Toys Lease remains in force and effect (including any and all renewals or extensions thereof), any exclusives in the Best Buy Lease which would prohibit the sale, rental or service of any products will not apply to the premises being leased under the Toys Lease ("Toys Premises"), *because the Toys Lease is prior to, and is not subject to, the Best Buy Lease and any exclusives therein.*

Market Plaza Ex. 10, at 99 (emphasis added).  One must conclude from this provision that the parties generally agree that the Propco I Debtors are not subject to use restrictions contained in leases between Market Plaza and other tenants that were entered into subsequent to the Toys Lease.

such lease will not disrupt any tenant mix or balance in such shopping center." Market Plaza contends that the Propco I Debtors cannot offer adequate assurance of future performance because Ollie's tenancy would disrupt the tenant mix or balance in the Shopping Center. Much of the evidence presented by Market Plaza was intended to demonstrate that it had carefully developed a tenant mix that would draw upper-income shoppers to the Shopping Center and that the inclusion of a discount retailer such as Ollie's would interfere with the synergetic relationship between existing, high-end tenants.[22]

In order to invoke the protection of § 365(b)(3)(D), a lessor must establish that there was an intended tenant mix and that the mix was part of the bargained-for-exchange of the debtor's and other tenants' leases. *Lasalle Nat'l Trust, N.A. v. Trak Auto Corp.,* 288 B.R. 114, 125 (E.D. Va. 2003), *rev'd on other grounds*, *Trak Auto Corp. v. W. Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237 (4th Cir. 2004). Market Plaza's evidence falls short of meeting this standard.

Market Plaza points to use restrictions in the Toys Lease, as well as to language included in subsequent leases with other Tenants, as evidence of an intended tenant mix.[23] None of the language in the Toys Lease, nor in the

---

[22] Ms. De Saint Felix: "If you have high-level, morely (sic) affluent customers and you put in a tenant that attracts a lower-income based tenant, then they are not going to be helping the other tenants." Tr. 33:1-4.

[23] See Market Plaza Ex. 4, containing excerpts of language from other Tenants' leases. Some provisions contain only permitted uses, some contain exclusive use protections, and some refer to exhibits that are not included in the exhibit.

leases entered into evidence, references an intended tenant mix or master plan for the Shopping Center.  Instead, Market Plaza seeks to have the Court find an intended tenant mix by piecing together portions of various permitted, exclusive and restricted use provisions contained in the Tenants' leases as they existed on May 26, 2010.[24]  The Court should not be called upon to complete this jigsaw puzzle, particularly when some of the pieces are missing and the Court has not been provided with a picture of how the final product should appear.  The burden is on Market Plaza to establish the existence of an intended tenant mix, and that requires more than simply demonstrating that it has provided each of its tenants with exclusivity protections.

Similar to the purpose of this language in the Toys Lease, the use provisions contained in the Shopping Center's other leases were meant to protect individual tenants from competition rather than establish a particular tenant mix.  Best Buy and Big Lots, tenants now occupying the Shopping Center,[25] are there because Market Plaza sought and obtained waivers of the restrictive use language contained in the Toys Lease.  If the restrictions contained in the Toys Lease were intended to preserve a master plan or tenant mix, then Market Plaza presumably would have secured tenants that did not require a waiver from those restrictions. That it failed to

---

[24] Market Plaza's Ex. 4 provides excerpts of lease provisions from ten different Tenants, as those leases existed as of May 26, 2010.
[25] Market Plaza identifies Best Buy as an anchor tenant.  Dkt. 927, at 10.

do so undermines its claim that the Toys Lease is the foundation of the intended tenant mix.

Market Plaza's claim that its tenant mix is based on maintaining an "upscale shopping center" is also undermined by its actions. Big Lots, like Ollie's, is a discount retailer.[26] Market Plaza did not lease space to Big Lots because it would attract an affluent customer base but rather, by its own admission, because it wanted to fill the space.[27] Market Plaza now seeks to impose a tenant mix upon the Propco I Debtors that was not negotiated with the parties to the Toys Lease and one that it has not imposed upon itself.

The fact that Market Plaza is articulating and seeking to enforce an intended mix and balance only now, when Market Plaza stands to gain financially, leads the Court to conclude that Market Plaza is driven primarily by the immediate goal of recovering the value of an under-market lease rather than by its commitment to a tenant mix and balance.[28] The Court finds that Market Plaza has failed to establish that it has a tenant mix that

---

[26] Declaration of Gerald R. Altland, ¶ 4. (Dkt. 874); Tr. 36, 9-10; Tr. 51:3-8; Dkt. 927, at 10.

[27] Ms. De Saint Felix: "We tried to lease this space ourself (sic); could not find a suitable tenant. We also then listed the property . . . . The only person they could come up with was Big Lots. It was the only one that would take the space. . . . So we had to do something for the financial part of the center, to get someone in there." Tr. 36:15–37:2.

[28] Market Plaza has expressed concern that an assignment of the Toys Lease to Ollie's may prompt Big Lots to take action or Best Buy to consider not renewing its lease. Notwithstanding the designation of Ollie's as a prohibited competitor, the language in the Big Lots Lease does not appear to apply to an assignment of an existing lease. *See* fn. 22, *supra*. (For the avoidance of doubt, the affidavit of Big Lots, Inc. Officer Timothy A. Johnson [Dkt. 891] has not been admitted into evidence.) Any concern about the potential future actions of Best Buy is speculative and immaterial.

will be disrupted by an assignment to Ollie's, most certainly not one that was part of a bargained-for-exchange between the parties to the Toys Lease. *See In re Toys "R" Us, Inc.*, 587 B.R. at 310 (citing *In re Ames Department Stores, Inc.*, 121 B.R. 160, 165 (Bankr. S.D.N.Y. 1990) (Section 365(b)(3)(D) "must be interpreted to refer to contractual protections and not undefined notions of tenant mix."). Therefore, Market Plaza is not entitled to the protection of §365(b)(3)(D).

## Conclusion

The Propco I Debtors have provided adequate assurance of future performance of the Toys Lease by Ollie's, including the adequate assurances required under § 365(b)(3)(C) and (D) of the Bankruptcy Code. The assignment will significantly benefit the creditors of the Propco I Debtors. Accordingly, Market Plaza's objection to the assignment of the Toys Lease to Ollie's will be overruled and the assignment will be approved.

A separate order will be issued.

Signed: February 11, 2019                    /s/ Keith L. Phillips
                                        United States Bankruptcy Judge


Entered on Docket: 2/11/19


Copies:

Jeremy S. Williams
Kutak Rock LLP
901 East Byrd Street, Suite 1000
Richmond, VA 23219

Joshua A. Sussberg, P.C.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022

Scott Lerner
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Asif Attarwala
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022

Robert S. Westermann
Hirschler Fleischer, P.C.
2100 East Cary Street
Richmond, VA 23223

Alexander R. Kalyniuk.
Hirschler Fleischer, P.C.
2100 East Cary Street
Richmond, VA 23223