| | |
|---|---|
| Edward O. Sassower, P.C. | James H.M. Sprayregen, P.C. |
| Joshua A. Sussberg, P.C. (admitted *pro hac vice*) | Anup Sathy, P.C. |
| Emily E. Geier (admitted *pro hac vice*) | Chad J. Husnick, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | **KIRKLAND & ELLIS LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 601 Lexington Avenue | 300 North LaSalle |
| New York, New York 10022 | Chicago, Illinois 60654 |
| Telephone:     (212) 446-4800 | Telephone:     (312) 862-2000 |
| Facsimile:      (212) 446-4900 | Facsimile:      (312) 862-2200 |

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:     (804) 644-1700
Facsimile:      (804) 783-6192

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US PROPERTY COMPANY I, LLC, *et al.*,[1] | ) | Case No. 18-31429 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING THE ASSUMPTION OF THE LA MESA LEASE**

Pursuant to the Court's instruction at the conclusion of the evidentiary hearing on January 24, 2019 (the "January 24 Hearing"), the above-captioned debtors and debtors-in-possession (the "Propco I Debtors" or "Debtors") respectfully make this post-trial submission of (a) proposed findings of fact and (b) a legal memorandum applying the law to the facts proven at the January 24 Hearing.

---

[1] The Propco I Debtors in these chapter 11 cases, along with the last four digits of each Propco I Debtors' federal tax identification number, are set forth in the *Final Order (I) Directing Joint Administration of the Propco I Debtors' Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 94]. The location of the Propco I Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

The Propco I Debtors are prepared to answer any additional questions the Court may have about this dispute at the status conference on February 25, 2019.

## Introduction

The Debtors sought and obtained Court approval to sell their unexpired lease in La Mesa, California, to an affiliate of the landlord for $11 million. The proposed purchaser and landlord were represented by the same counsel. Because assumption of a lease necessarily precedes assignment of a lease, the Court order authorizing the sale served as an assumption of the lease. *See In re Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006) ("According to § 365(f)(2)(A), assumption must precede assignment."); *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001) ("Before an executory contract may be assigned, the trustee first must assume the contract...."); *see also In re Specialty Foods of Pittsburgh, Inc.*, 91 B.R. 364, 376–77 (Bankr. W.D. Pa. 1988) (debtor need not use the word "assume" in its sale motion; "the motion to sell is sufficient and a motion to assume and sell would be superfluous"). The sale order expressly states that the Propco I Debtors met all requirements of section 365 of the Bankruptcy Code, and specifically sections 365(b) and 365(f)—which apply solely to assumption and assignment.

Similarly, the Purchase Agreement (approved as part of the sale order) provided that if the sale were to fall through, the Debtors' obligation to pay rent would recommence. The parties' behavior after the sale order was entered was consistent with an assumption, and entirely inconsistent with a rejection. The landlord/buyer paid additional consideration to extend the closing date (which would have been unnecessary and irrational if the lease were deemed rejected and had reverted to the landlord by operation of law) and requested additional rent and building repairs and improvements from the Debtors well after the assumption/rejection deadline had passed. And all of this makes sense: the sale was approved on September 13 but not scheduled to

close until November 12—approximately one month <u>after</u> the October 16 deadline to assume leasehold interests.  Yet the landlord now takes the position that the lease was rejected by operation of law on October 17, and that the Debtors and their estates should only receive $400,000 (the landlord/buyer's earnest money) for an asset that the landlord/buyer agreed to purchase for $11 million.

The Court here should use its inherent authority to interpret its prior orders to clarify that the La Mesa sale order meant what everyone, including the landlord/buyer, understood it to mean: the Debtors assumed the La Mesa lease by obtaining approval of the sale.

## **Proposed Findings of Fact**

### **I.    Background**

1. On June 28, 2018, the Propco I Debtors filed the *Propco I Debtors' Motion for Entry of an Order Extending the Time Within Which the Propco I Debtors Must Assume or Reject Unexpired Leases of Nonresidential Real Property* [Docket No. 195] (the "<u>365(d)(4) Motion</u>"), seeking to extend their time period to assume unexpired leases of nonresidential real property through October 16, 2018 (the "<u>365(d)(4) Deadline</u>").

2. To facilitate the sale of certain real estate assets, on July 26, 2018, the Court approved sale procedures relating to the sale of assets up to $10 million.  *See Order Establishing Procedures to Sell, Transfer, or Abandon Certain Non-Auction Assets* [Docket No. 398] (the "<u>Non-Auction Sale Procedures Order</u>").  Any asset sales in excess of $10 million required a motion and hearing.

3. The Propco I Debtors negotiated the sale of the unexpired lease for store number 5671, located at 8165 Fletcher Parkway, La Mesa, California (the property, the "<u>La Mesa Property</u>" and the lease, the "<u>La Mesa Lease</u>") for a purchase price of $11 million.  Because this purchase price exceeded the $10 million cap set forth in the Non-Auction Sale Procedures Order,

3

the Propco I Debtors prepared a motion and sought Court approval of the sale. *See Propco I Debtors' Motion for Entry of an Order (I) Approving the Private Sale Free and Clear of Liens, Claims, Encumbrances, and Interests and (II) Granting Related Relief* [Docket No. 479] (the "Sale Motion").[2]

4. On September 13, 2018, after notice and a hearing, the Court entered the *Order (I) Approving the Private Sale Free and Clear of Liens, Claims, Encumbrances, and Interests and (II) Granting Related Relief* [Docket No. 520] (the "Sale Order"), authorizing the sale of the La Mesa Lease, free and clear of all liens, encumbrances, and other interests (the "Sale") to Wing Avenue Investment, LLC (the "Buyer") for $11 million, as set forth in that certain Real Estate Purchase Agreement, by and between TRU 2005 RE I, LLC and Buyer, dated as of August 29, 2018 (the "Purchase Agreement").

II. **The Sale Order Approved Assumption and Assignment of the Lease.**

5. The Sale Order (which the Landlord/Buyer's counsel reviewed and provided comments) expressly provided for assumption of the La Mesa Lease. It explained in more than one instance that the requirements of section 365 of the Bankruptcy Code—the Code provisions relating to assumption and rejection of executory contracts and unexpired leases—had been satisfied. *See* Sale Order ¶ F ("All the requirements of section 363 and 365 of the Bankruptcy Code have been met with respect to the sale of the Ground Lease."); *id.* ¶ 5 ("The Propco I Debtors

---

[2] Contrary to arguments SAICO Gateway Company, LLC ("the Landlord") raised at the January 24 Hearing, the Debtors did not violate any procedural orders previously entered by the Court. The *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 393] specifically provides that "[a]pproval of the Contract Procedures and this Order does not prevent the Propco I Debtors from seeking to reject or assume a Contract by separate motion," *id.* ¶ 8—as the Debtors did with the Sale Motion. Likewise, by its terms the *Order Establishing Procedures to Sell, Transfer, or Abandon Certain Non-Auction Assets* [Docket No. 398] applies only to "the sale, transfer, or abandonment of assets of the Propco I Debtors with a sale price of up to $10 million," *id.* at 1—thus excluding the La Mesa sale because of its $11 million purchase price.

4

have met all requirements of sections 365(b) and 365(f) of the Bankruptcy Code in connection with the sale of the Ground Lease to the Buyer."). Section 365(b) relates specifically to the criteria a trustee or debtor-in-possession must meet to assume a lease; section 365(f) provides, *inter alia*, that a trustee or debtor-in-possession "may assign an executory contract or unexpired lease of the debtor only if the trustee assumes such contract or lease in accordance with the provisions of this section." 11 U.S.C. § 365(f)(2)(A). These references to section 365 would have been meaningless unless the Sale Order approved assumption of the La Mesa Lease. The Sale Order also gave the Propco I Debtors broad authority and direction to take "any and all actions necessary or appropriate to consummate the Purchase Agreement." *See* Sale Order ¶¶ 2, 6.

6. The Sale Order specifically approved the Purchase Agreement in the form negotiated between the Debtors and the Landlord/Buyer. *See id.* ¶ 2 ("The Purchase Agreement is hereby approved …"). The Purchase Agreement was attached to the Sale Motion. *See* Sale Motion, Docket No. 479 at 26 of 49; *see also* Docket No. 477. Like the Sale Order, the Purchase Agreement plainly and expressly contemplates transfer pursuant to assumption and assignment rather than termination—using the phrase "Assignment and Assumption" no less than ten times. *See id.* at 35 of 49 (section 10) ("Transfer of the Premises shall be made pursuant to (a) an assignment and assumption of lease …"); *id.* at 28 of 49 (section 2(e)) (the "Ground Lease … is to be assigned to Buyer pursuant to the Assignment and Assumption of Lease (defined in section 10)"); *id.* at 35 of 49 (section 11) (twice referencing "counterparts of the Assignment and Assumption of Lease"); *id.* at 37-38 of 49 (section 13) (four references to "the Assignment and Assumption of Lease"); *id.* at 48 of 49 (referencing "Exhibit 'B'" as "Assignment and Assumption of Lease").

5

7.      The Purchase Agreement expressly stated that if the sale fell through, the Debtors would be responsible for future rent—evidencing that the Debtors had assumed the La Mesa Lease even if assignment fell through. *See* Purchase Agreement, Docket No. 479 at 38 of 49 (section 13(i)) ("if this Agreement is terminated … then Seller's obligation to pay Rent pursuant to the Ground Lease shall recommence on the date which this Agreement is terminated …").[3]

8.      The Sale Motion itself lists section 365 of the Bankruptcy Code as a basis for the relief requested. *See* Sale Motion at 2 of 49, ¶ 4. The Debtors included a broad reservation of rights towards the end of the Sale Motion, which stated, *inter alia*, that "[n]othing contained herein is intended or shall be construed as … (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or pursuant to the CCAA."[4] Docket No. 479 at 15 of 49, ¶ 27. Notwithstanding the inclusion of this language, the Sale Order and the Purchase Agreement, which control, state that the Sale Motion requested and the Sale Order approved assumption and assignment. The Sale Order provides that "[t]o the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern." *Id.* at 11 of 49, ¶ 14.

---

[3]  The Purchase Agreement also provided that rent under the La Mesa Lease began to abate following the month in which the Sale Order was entered by the Court, shifting the rent obligations as if the assumption and assignment occurred upon the entry of the Sale Order. *See* Purchase Agreement, Docket No. 479 at 38 of 49 (section 13(i)) ("Buyer and Seller acknowledge and agree that Seller shall not be obligated to pay any Rent … to Buyer pursuant to the Ground Lease from the period of time then and after the end of the calendar month in which the Sale Order is entered by the Bankruptcy Court…").

[4]  Landlord's argument that the Debtors intentionally included this boilerplate language to leave their options open is incompatible with the terms of the Purchase Agreement and the timing associated with the proposed closing of the sale. Following entry of the Sale Order, the Debtors were irrevocably committed and obligated to consummate the transaction by assigning the La Mesa Lease to Landlord/Buyer, absent a default by Buyer under the Purchase Agreement. The Debtors' obligation to assign the Lease to Landlord/Buyer was protected by Buyer's right to obtain specific performance in the event the Debtors failed or refused to close the transaction by assigning the Lease to Landlord/Buyer. *See* Purchase Agreement, Docket No. 479 at 40 of 49 (section 18(a)) ("If Seller fails to perform any of Seller's obligations under this Agreement… the Buyer's sole and exclusive remedy shall be to either: (i) obtain specific performance of this Agreement, ….").

9. In the Sale Order, the Court "retain[ed] jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of [the] Order." Sale Order ¶ 17.

10. The Debtors and the Landlord/Buyer agreed to extend the closing date to November 30. The Buyer failed to close the sale by the November 30 closing date and thus forfeited its earnest money. *See* Docket No. 1004 at 4 ("The sale did not close and Buyer forfeited its Earnest Money deposit of $400,000 ...."). On November 29 (prior to the November 30 closing date), the Debtors, out of an abundance of caution and in order to leave no doubt as to whether the lease was assumed, filed the *Propco I Debtors' Motion for Entry of an Order (I) Approving the Assumption of Certain Real Estate Assets and (II) Granting Related Relief* [Docket No. 833]. The Landlord filed its opposition on January 3, 2019 [Docket No. 1004]. The Debtors filed their reply on January 8 [Docket No. 1025].

11. The Court held a hearing on January 24. During that hearing, the Court received a number of documents into evidence: the Declaration of Michael J. Maher [Docket No. 1004-1]; the Declaration of Jared Oakes [Docket No. 1026]; and Exhibits A through F attached to the Debtors' reply brief [Docket No. 1025 at 15 of 99 through 99 of 99]. *See* 1/24/19 Hr'g Tr. at 54:9-55:24 (admitting evidence).

### III. The Landlord/Buyer Understood that the Debtors Assumed the Lease.

12. Buyer Wing Avenue Investment, LLC is an affiliate of Landlord SAICO Gateway Company, LLC. Moreover, Buyer has the same principal as the Landlord, and is and has been represented by the same counsel as the Landlord. *See* Maher Decl., Docket No. 1004-1 ¶ 1 ("I represent SAICO and various of its affiliates in connection with their acquisition, sale and leasing of real property. In particular I represented first SAICO and then its affiliate, Wing Avenue Investment, LLC, in connection with the Real Estate Purchase Agreement ("PSA") between TRU

7

2005 RE I, LLC ("Seller") and Wing Avenue Investment, LLC ("Buyer")"); *see also* Purchase Agreement, Docket No. 479 at 27 of 49 (recital B) ("An affiliate of Buyer is the landlord …"); *id.* at 43 of 49 (providing that notice to Buyer related to the Purchase Agreement shall be given to SAICO Gateway Company, LLC (i.e., the Landlord)); *id.* at 43 of 49 (identifying Keith R. Anderson as Trustee of SAICO Gateway Company, LLC) and 47 of 49 (identifying Keith Anderson as Manager of Wing Avenue Investment, LLC); Oakes Decl., Docket No. 1026 ¶ 3 ("During the course of these negotiations, I communicated primarily with Mr. Michael J. Maher, who represented SAICO Gateway Company, LLC (the "Landlord") and Wing Avenue Investment, LLC (the "Buyer"). During the past six months, the Landlord and the Buyer have had the same principal and were represented exclusively by Mr. Maher."). The Landlord and Buyer acted as one and the same entity in negotiations—for instance, the Purchase Agreement (nominally entered into by the Buyer) tolled the Debtors' rent payments, which is a concession only the Landlord could make. *See* Purchase Agreement, Docket No. 479 at 38 of 49 (section 13(i)) ("Buyer and Seller acknowledge and agree that Seller shall not be obligated to pay any Rent… to Buyer pursuant to the Ground Lease from the period of time then and after the end of the calendar month in which the Sale Order is entered by the Bankruptcy Court").[5]

13.     Initially, the Propco I Debtors and the Landlord contemplated entering into a lease termination agreement to effectuate the sale of the La Mesa Lease to Landlord/Buyer. Oakes

---

[5] Because counsel to Landlord was also counsel to Buyer—and thus Landlord received actual notice of all filings and participated in all relevant negotiations with the Debtors—due process is more than satisfied. *See, e.g.*, *In re Parandeh*, No. 14-12578-BFK, 2015 WL 430383, at *4 (Bankr. E.D. Va. Jan. 28, 2015) (explaining that "[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and "[t]he overwhelming weight of authority is that, in bankruptcy cases, notice served on a creditor's counsel is presumed to satisfy both bankruptcy and due process notice requirements as to the creditor, so long as there is a nexus between the creditor's retention of the attorney and the creditor's claim against the debtor") (citation omitted).

8

Decl., Docket No. 1026 ¶ 4. Early in negotiations—prior to the October 16 lease assumption deadline—the Propco I Debtors agreed to the Landlord/Buyer's request that the sale be effectuated through an assumption and assignment of the La Mesa Lease, and *not* through a termination of the La Mesa Lease. *Id.* In fact, counsel who represented the Landlord/Buyer changed the initial draft of the Purchase Agreement to reflect this change. *See* **Exhibit A**, Docket No. 1025 at 26 of 99 (Landlord/Buyer changing the purchase agreement to provide that "[t]ransfer of the premises shall be made pursuant to (a) an assignment and assumption of lease," where it previously stated that transfer would be made pursuant to "a termination agreement"). In total, Landlord/Buyer inserted the phrase "assignment and assumption" into the Purchase Agreement at least ten times. *See id.* at 19 of 99 (new section (e)); *id.* at 26 of 99 (section 10); *id.* at 26-27 of 99 (section 11); *id.* at 28-29 of 99 (section 13); *id.* at 37 of 99 (inserting as new "Exhibit B" a placeholder for "Assignment and Assumption of Lease").[6]

14.  Following the entry of the Sale Order (which occurred prior to the 365(d)(4) Deadline), the parties worked towards a closing. On October 26, 2018, counsel to Landlord/Buyer provided comments to the assignment and assumption agreement included in the set of closing documents. **Exhibit B**, Docket No. 1025 at 76 of 99 (Landlord/Buyer counsel explaining he "reviewed the closing documents," and listing "Assignment and Assumption of Lease" among them).

---

[6] Landlord's argument that the Purchase Agreement was structured such that assumption of the La Mesa Lease would not occur until the closing date pursuant to the Assignment and Assumption of Lease attached as **Exhibit B** to the Purchase Agreement is erroneous. The Assignment and Assumption of Lease attached as **Exhibit B** to the Purchase Agreement provides that, upon the closing date (i) Assignor assigns the La Mesa Lease to Assignee, and (ii) Assignee assumes Assignor's right, title and interest in and to the La Mesa Lease. That assumption language relates to Buyer's assumption of the Debtors' obligations under the La Mesa Lease, not Debtors' assumption of the La Mesa Lease. *See* Docket No. 477 at 79 of 90.

15. The Sale Order—which was entered on September 13, 2018—gave the Debtors full authority to complete a sale that was set to close on November 12, 2018[7]—after the deadline to assume or reject would have passed. The Landlord/Buyer requested and the Propco I Debtors accommodated amendments to the Purchase Agreement to delay the closing date to the end of November. Certain amendments requested by the Landlord/Buyer proposed paying an additional non-refundable deposit in exchange for additional time to close the transaction, and were requested and executed well after the expiration of the 365(d)(4) Deadline. *See* **Exhibit C**, Docket No. 1025 at 79 of 99 (Landlord/Buyer counsel inquiring "whether it would be difficult to move the closing to November 20"); *id.* at 80 of 99 (Landlord/Buyer counsel attaching "a first amendment moving the closing date to November 20th"); *id.* at 83 of 99 (Landlord/Buyer counsel proposing "a further extension of the closing to November 30th, with the Buyer putting up an additional $100,000 hard deposit"). The agreed extensions were memorialized in amendments to the Purchase Agreement, with Landlord/Buyer paying an additional and nonrefundable $100,000 hard deposit to delay the closing date until November 30, 2018. *See* **Exhibit D**, Docket No. 1025 at 87 of 99. Additionally, on November 27, 2018, counsel to Landlord/Buyer requested a further extension of the Closing Date to December 31, 2018 and offered an additional non-refundable deposit of $50,000 in exchange for the extension. *See* **Exhibit E**, Docket No. 1025 at 96 of 99 (Landlord/Buyer counsel inquiring "whether an additional $50,000.00 hard deposit would be sufficient for the seller to agree to extend the closing from this Friday to December 31st").

---

[7] Section 13 of the Purchase Agreement states that "[c]losing shall take place on that date which is forty-five (45) days after the later of: (i) expiration of the Due Diligence Period, or (ii) the date on which the Sale Order is entered by the Bankruptcy Court (such date for Closing, the "***Closing Date***")." The Sale Order was entered on September 13 and the Due Diligence Period expired on September 28. Forty-five days after September 28 is November 12.

16. If—as Landlord/Buyer now claims—the La Mesa Lease had been deemed rejected as of October 16, 2018, the Landlord/Buyer would have no reason to pay for these extensions; the lease would already belong to the Landlord. In addition, the Landlord would have just terminated on October 17 and taken back the property it was under contract to purchase after the 365(d)(4) deadline passed.

17. Similarly, Landlord/Buyer's counsel sent the Debtors an email on December 13, 2018, that is entirely inconsistent with the notion that the La Mesa Lease had been rejected. *See* **Exhibit F**, Docket No. 1025 at 99 of 99. Specifically, Landlord/Buyer requested December rent from the Debtors—noting that "the December semi-annual installment of property taxes was paid; however, rent for December has not been paid." *Id.* The Landlord/Buyer also informed the Debtors about issues on the premises—alarms going off and the roof leaking—suggesting that the Debtors fix these issues and provide "contact information for the new person responsible so that [Landlord/Buyer] can be assured these matters are being addressed or will be addressed." *Id*. If the Landlord/Buyer believed the lease had been rejected, it would not be requesting December rent from the Debtors, nor would the Debtors have any ongoing maintenance obligations.[8]

### Proposed Conclusions of Law

**I. The Sale Order Functioned as an Assumption of the La Mesa Lease.**

18. The Court has inherent authority to interpret its orders, including the Sale Order. *See In re Merry-Go-Round Enterprises, Inc*., 400 F.3d 219, 227 (4th Cir. 2005) ("a bankruptcy

---

[8] At the January 24 Hearing, counsel to the Landlord asserted that the Landlord had not cashed three rent checks. 1/24/19 Hr'g Tr. at 68:15-69:20. The Landlord did not present any evidence to support this contention. Further, the Landlord provided the Debtors with no notice that it had stopped accepting rent. To the contrary, the Landlord sought December rent from the Debtors, even after the November 30 closing deadline had expired and even after the Debtors had filed their Motion to ensure that the La Mesa Lease was assumed [Docket No. 833], as reflected in **Exhibit F**, Docket No. 1025 at 99 of 99. Thus, even if the Landlord did not cash the Debtors' checks it nonetheless gave them every reason to believe that all parties believed the lease was assumed.

court is deemed to be in the best position to interpret its own orders") (citations omitted); *Weiner v. Fort*, 197 F. App'x 261, 263 (4th Cir. 2006) ("the bankruptcy court drew upon its inherent authority to interpret its own orders"). In this case, the Sale Order specifically provides that the Court "retain[ed] jurisdiction with respect to all matters arising from or related to the implementation, *interpretation*, or enforcement of [the] Order." Sale Order ¶ 17 (emphasis added). Section 105(a) of the Bankruptcy Code further vests in the Bankruptcy Court the ability to interpret its own orders. *See, e.g., In Matter of Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016) ("[T]he Code charges the bankruptcy court with carrying out its orders, *see* [11 U.S.C.] § 105(a) (providing that bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"). Hence, a bankruptcy court plainly has jurisdiction to interpret and enforce its own prior orders.") (citation omitted).

19. As explained in the Findings of Fact, the Sale Order serves as an assumption and assignment of the La Mesa Lease for a number of reasons: the Sale Order specifically stated that the Debtors met the criteria for assumption and assignment under section 365 of the Bankruptcy Code; pursuant to the terms of the Purchase Agreement, the Debtors were contractually obligated to assign the La Mesa Lease to the Landlord/Buyer but for a default by Landlord/Buyer; and the Purchase Agreement approved by the Sale Order provided that if the sale fell through, the Debtors would be responsible for future rent.

20. Accordingly, the Sale Order was an "express order of the court" necessary to effectuate an assumption of a lease. *See In re A.H. Robins Co.*, 68 B.R. 705, 708 (Bankr. E.D. Va. 1986); *see also In re Stamp Farms, LLC*, No. 12-10410, 2014 WL 1017041, at *8 (Bankr. W.D. Mich. Mar. 13, 2014) (holding that in an instance where a purchase agreement and sale order were "replete with references to the Debtor's assumption of various leases," those leases were not

deemed to be rejected under section 365(d)(4)). The court in *In re A.H. Robins Co.* stated that an election to assume an executory contract "requires a positive action on the part of the debtor-in-possession"; the Propco I Debtors met that standard. 68 B.R. at 711.

21. This conclusion is bolstered by the legal framework in which assumption and assignment occurs. The courts that have examined the issue have concluded that assumption necessarily precedes assignment. *See In re Mirant Corp.*, 440 F.3d at 253 ("According to § 365(f)(2)(A), assumption must precede assignment."); *Cinicola v. Scharffenberger*, 248 F.3d at 120 ("Before an executory contract may be assigned, the trustee first must assume the contract...."); *In re Eastman Kodak Co.,* 495 B.R. 618, 622 (Bankr. S.D.N.Y. 2013) ("The cases that have construed § 365(f)(2)(A) hold only that assumption must occur before assignment. … The plain reading of the statute is that an assignment cannot occur unless the debtor has satisfied the provisions of § 365 governing assumption"); *In re 315 Franklin, LLC*, No. 17-00512, 2017 WL 6371342, at *1 (Bankr. D.D.C. Dec. 12, 2017) ("Without a request to assume and assign, there cannot be an assignment of the leases") (citing cases); *In re Qintex Entm't, Inc.*, 950 F.2d 1492, 1495 (9th Cir. 1991) ("the sale of Qintex's assets will not include any contract that is executory unless Qintex first assumes the contract"); *In re MPF Holding U.S. LLC*, 495 B.R. 303, 321 (Bankr. S.D. Tex. 2013) (a debtor "cannot transfer the executory contract without first assuming it under section 365").

22. The Sale Order—which authorized the Debtors to assign their lease to the Landlord/Buyer—thus approved the Debtors' assumption of that lease.[9] *See In re Specialty Foods*

---

[9] Counsel for Landlord conceded at the January 24 Hearing that the Sale Order authorized the Debtors to complete the transaction. *See* 1/24/19 Hr'g Tr. at 66:15-20 (The Court: "Well, this order authorized them to go forward with the transaction -- " Mr. McIntyre: "Absolutely." The Court: " -- which they would have had to assume to assign to complete the transaction, right?" Mr. McIntyre: "They would have …"). This means the lease was assumed—otherwise the transaction was incapable of closing in November because of the 354(d)(4) deadline.

13

*of Pittsburgh, Inc.,* 91 B.R. at 376–77 ("When, as in this case a motion to sell and a motion to assume and sell would have the identical effect and when the procedural safeguards are the same, the motion to sell is sufficient and a motion to assume and sell would be superfluous."); *id.* ("It would be counterproductive to require the Trustee and an overburdened Bankruptcy Court to duplicate the effort, time and expense involved in filing two separate motions, providing notice twice, and conducting two separate adjudications to dispose of one estate asset simply because the asset may be characterized as an executory contract.  It would be equally nonsensical to require the Trustee to use the technical term 'assume' in a motion to sell in order to have the sale before the court in a confirmable posture. … [T]his court holds that the sale of executory contracts under the facts at bar is confirmable notwithstanding the fact that the Trustee did not file a separate motion to assume or use the word 'assume' in his motion to sell.").

## II.    **Landlord/Buyer Waived and/or is Estopped from Contending the Lease Has Been Rejected.**

23.    "[E]quitable considerations retain their validity in determining whether a lease should be deemed rejected by operation of law…." *In re Pier 5 Mgmt. Co.,* 83 B.R. 392, 394 (Bankr. E.D. Va. 1988).  Courts in a number of circumstances have estopped landlords from claiming that a lease is rejected by operation of law because the debtor failed to timely assume the lease where the landlord's conduct was incompatible with rejection or contributed to the missed deadline.  In *In re Pier 5 Mgmt. Co.,* this court held that discussions between landlord and debtor in which the landlord promised (but failed) to provide information necessary to accurately compute rent under the lease estopped the landlord from asserting that the lease had been rejected.  *Id.* ("Having promised to provide the information necessary to resolve the rent dispute, the Court finds [landlord's] subsequent change of position without notice to [debtor] operates to estop [landlord] from asserting the forfeiture of § 365(d)(4).  Therefore, this Court holds that the lease is not deemed

14

rejected and may be assumed by the Chapter 7 Trustee within 60 days of this ruling."). Courts have also applied waiver and estoppel where the debtor and landlord had negotiated a tentative settlement allowing the debtor to retain the benefit of the lease. *See In re Car-Gill, Inc.*, 125 B.R. 133, 138 (Bankr. E.D. Pa. 1991) ("[B]oth waiver and estoppel can be successfully invoked by the Debtor here. By agreeing to settle the Motion … on terms which would allow the Debtor to retain the benefits of the Lease, contingent only on a further agreement between the parties as to the amount of rent arrearages owed by the Debtor, the Landlord voluntarily forfeited the right to unconditionally evict the Debtor with which it had been vested by the terms of § 365(d)(4).").

24.    In light of the Landlord/Buyer's conduct evidencing an assumption and compatible only with an assumption (and not a rejection), the doctrines of waiver and estoppel further support the Court's conclusion that the Sale Order either functioned as an assumption or, alternatively (as discussed below), consent to extended time in which to assume. *See In re Pier 5 Mgmt. Co.,* 83 B.R. at 394 ("It is particularly disingenuous of [landlord] to demand the benefit of § 365(d)(4) when its own action created the reasonable belief in [debtor] that negotiations … were ongoing."); *see also Matter of Haute Cuisine, Inc.*, 57 B.R. 200, 203 (Bankr. M.D. Fla. 1986) ("The record is clear that [landlord] was aware of the Debtor's intention to assume the Lease Agreement, and in addition, it is estopped to insist on forfeiture of the lease based on its conduct."); *Matter of J. Woodson Hays, Inc.*, 69 B.R. 303, 309 (Bankr. M.D. Fla. 1987) (finding waiver and explaining that "there is no reason why a lessor may not waive the right accorded to the landlord by the provision of the statute or it may not be estopped to assert the same if there is evidence to establish that because of its conduct the failure to comply strictly with the provisions of the statute was not the fault of the debtor/tenant, but it was done in reliance of the conduct of the landlord"). This outcome comports with the general equities at play in waiver and estoppel doctrines. *See generally*

*In re Cassell*, 41 B.R. 737, 741 (Bankr. E.D. Va. 1984) (party can waive or relinquish right by conduct inconsistent with intent to enforce that right); *Strong v. Cty. of Santa Cruz*, 543 P.2d 264, 266 (Cal. 1975)[10] ("The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment."); *In re Royal Meadows Stables, Inc.*, 187 B.R. 516, 518 (Bankr. E.D. Va. 1995) (citing *Thomasson, Adm'r v. Walker,* 190 S.E. 309, 312–313 (Va. 1937)) ("The general rule of equitable estoppel, or, as it is frequently called, estoppel in pais, is that when a person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and act upon that belief, the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby."); *In re MBA, Inc.*, 51 B.R. 966, 971 (Bankr. E.D. Va. 1985) (citing Section 90 of the Restatement (First) of Contracts (1932)) (explaining that promissory estoppel occurs when "the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise").

25.  Section 105(a) provides the Court with further authority to enforce these equitable considerations, and to prevent an outcome where the Debtors' estates would be deprived of an asset that Landlord/Buyer agreed to purchase for $11 million, instead receiving only the $400,000,

---

[10] The Purchase Agreement provides that it "shall be construed and enforced in accordance with the laws of the State where the Premises is located, notwithstanding the application of any principles of conflicts of laws." Purchase Agreement, Docket No. 479 at 44 of 49, § 23(d). The Premises is located in California.

as a result of the Landlord/Buyer's failure to close. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and underscores that the Court may "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105.

### III. The Landlord Consented to an Extension of 365(d)(4) By Allowing the Assumption and Assignment of the La Mesa Lease to Be Delivered on the Closing Date.

26. In the alternative, the Court's approval of a sale scheduled to close after the section 365(d)(4) deadline of October 16, 2018, coupled with the Landlord/Buyer's requests for further closing date extensions function as approval and consent to an extension of section 365(d)(4).

27. The Sale Order—which was entered on September 13, 2018—gave the Debtors full authority to complete a sale that was set to close on November 12, 2018—after the deadline to assume or reject would have passed. The Sale Order provided the Debtors with authority "to take any and all actions necessary or appropriate to consummate the Purchase Agreement." Docket No. 520 at 3, ¶ 2. The Landlord's argument that the Debtors would have needed to take some further action to close the sale the Court already approved is mistaken. Following entry of the Sale Order, the Debtors were contractually bound to consummate the transaction absent the Buyer's default— the Purchase Agreement entitled the Buyer to specific performance in the event the Debtors failed or refused to close the transaction. *See* Purchase Agreement, Docket No. 479 at 40 of 49 (section 18(a)) ("If Seller fails to perform any of Seller's obligations under this Agreement… the Buyer's sole and exclusive remedy shall be to either: (i) obtain specific performance of this Agreement, …."). Thus, to the extent the Debtors needed authority to extend the section 365(d)(4) deadline past October 16, the Sale Order (which allowed for closing on November 12) provided that authority.

17

28. Likewise, because the Purchase Agreement, as approved by the Court, expressly contemplated an assignment of the La Mesa Lease, and the Landlord/Buyer continued to work with the Debtors to negotiate and finalize closing documentation throughout the weeks leading up to the October 16, 2018 deadline and well beyond, the Landlord/Buyer consented to an extension of the assumption deadline. The Landlord/Buyer requested multiple extensions of the deadline to close, and even provided additional consideration in the amount of $100,000 for an extension of the deadline to close, ultimately extending that deadline to November 30, 2018 (and requesting an extension to December 30 for an additional $50,000 deposit). *See* **Exhibits C, D, E.**

29. If the La Mesa Lease was rejected by operation of law on October 16, as the Landlord now claims, then the Landlord/Buyer paid well over $100,000 (and offered to pay another $50,000) to extend its right to close on an asset the Landlord/Buyer already owned. Likewise, the Landlord would have no basis to request December rent or repairs to the premises if the La Mesa Lease had been terminated. *See* **Exhibit F**. This course of conduct by the Landlord/Buyer evidences that all parties understood that the La Mesa Lease already had been assumed, or at the very least indicates that the Landlord consented to an extension of the Propco I Debtors' period to assume the La Mesa Lease.

[*Remainder of page intentionally left blank*]

Richmond, Virginia
Dated: February 14, 2019

/s/ *Jeremy S. Williams*

| | |
|---|---|
| **KUTAK ROCK LLP** | **KIRKLAND & ELLIS LLP** |
| Michael A. Condyles (VA 27807) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Peter J. Barrett (VA 46179) | Edward O. Sassower, P.C. |
| Jeremy S. Williams (VA 77469) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| 901 East Byrd Street, Suite 1000 | Emily E. Geier (admitted *pro hac vice*) |
| Richmond, Virginia 23219-4071 | 601 Lexington Avenue |
| Telephone:   (804) 644-1700 | New York, New York 10022 |
| Facsimile:   (804) 783-6192 | Telephone:   (212) 446-4800 |
| Email:   Michael.Condyles@KutakRock.com | Facsimile:   (212) 446-4900 |
|        Peter.Barrett@KutakRock.com | Email:   edward.sassower@kirkland.com |
|        Jeremy.Williams@KutakRock.com |        joshua.sussberg@kirkland.com |
| |        emily.geier@kirkland.com |

*Co-Counsel to the Propco I Debtors*          -and-
*and Debtors in Possession*

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
       anup.sathy@kirkland.com
       chad.husnick@kirkland.com

*Co-Counsel to the Propco I Debtors*
*and Debtors in Possession*