UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:                                          Chapter 11

Toys "R" Us Property Company I,                 Case No. 18-31429-KLP
   LLC, *et al.*,                               Jointly Administered
                   Debtors.

## MEMORANDUM OPINION

Before the Court is the objection of Upper Glen Street Associates, L.L.C., to the proposed assignment of a lease between it and Toys "R" Us NY Limited Partnership, predecessor-in-interest to Toys "R" Us Property Company I, LLC, to Aldi, Inc.  For the reasons set forth herein, the Court will overrule the objection.

## FINDINGS OF FACT

*The Toys Lease*.  On July 18, 1996, Albany Public Markets entered into a lease agreement (the "Toys Lease") with Toys "R" Us NY Limited Partnership, predecessor-in-interest to Toys "R" Us Property Company I, LLC, et al. (the "Debtors")[1] for premises (the "Premises") located in a shopping area in Queensbury, New York (the "Toys Parcel").[2]  A Toys "R" Us retail store was operated on the Premises.  Article V of the Toys Lease, which is attached as an exhibit to the facts

---

[1] An order was entered on April 24, 2018, directing the procedural consolidation and joint administration only of the chapter 11 cases of: Toys "R" Us Property Company I, LLC, Case No. 18-31429-KLP; MAP Real Estate, LLC, Case No. 18-31430-KLP; TRU 2005 RE I, LLC, Case No. 18-31431-KLP TRU 2005 RE II Trust, Case No. 18-31432-KLP; Wayne Real Estate Company, LLC, Case No. 18-31433-KLP, and Wayne Real Estate Holding Company, LLC, Case No. 18-31428-KLP. Dkt. 94.

[2] The Premises are designated as Store 6367 by the Debtors. From a map of the Toys Parcel attached as Exhibit 2 to the Declaration of Mike Matlat, Dkt. 871, it appears that there is at most one other building located on the Toys Parcel; that building appears to be currently in use as a bank.

stipulated by the parties,[3] is entitled "Use," and provides that the Premises may be used for "any lawful use or purpose, except a bank or such similar use restricted by the existing lease . . . ." The Court has been pointed to no other relevant restriction in the Toys Lease. The Toys Lease requires the tenant ("Toys")[4] to pay a common area expense contribution "equal to the Common Area Expense for all Common Areas on the Tenant's Parcel." Toys Lease, § 3.04(a). The Toys Lease also provides that "Tenant shall have the right at any time and from time to time during the Lease Term to assign this Lease or sublet the Demised Premises, or any part or parts thereof." No restriction on the right to assign is contained in the Toys Lease.

Among the other terms of the Toys Lease is the requirement that Toys be responsible for its own utilities services. Toys was granted a "non-exclusive easement and right of use . . . of the common areas," defined as:

> those portions of the Center which are intended for, or are available for common use by any and all of the owners, tenants or users of land and/or buildings within the Center and the business invitees of such owners, tenants or used, including, without limitation, the parking areas, lanes, drive and driveways, entrances, all means of ingress and/or egress, curb cuts, roadways, passageways, sidewalks, landscaped areas, lighting facilities and equipment located in the Center, as well as the easement to the Utility Parcel.[5]

The common areas are to be maintained by the landlord.

Section 29.08 of the Toys Lease provides in part that:

> Neither Landlord nor Tenant shall be in default under any provision of this Lease by virtue of either (x) any action taken by either Landlord or Tenant pursuant to any other lease or other agreement between Landlord and Tenant, or (y) any default or alleged default of either

---

[3] Dkt. 884.
[4] The Court uses the generic "Toys" to encompass the various non-landlord parties to the Toys Lease.
[5] Section 27.01, Toys Lease.

> Landlord or Tenant under any other lease or other agreement between Landlord and Tenant, and . . . no rights or obligations of either Landlord or Tenant under this Lease shall be expanded, diminished or in any way modified by any rights or obligations of either Landlord or Tenant under any other lease or other agreement between Landlord and Tenant. Any references in this Section to the parties or to Landlord or Tenant shall be deemed to include any parent, subsidiary, affiliate, controlled or controlling entity thereof.

The Toys Lease was amended on July 15, 2015, with all of the original terms not specifically modified remaining in effect.[6]

*The Price Rite Lease.* On August 1, 2002, PRRC, Inc. ("Price Rite") entered into a lease agreement (the "Price Rite Lease") with John J. Nigro, predecessor-in-interest to Upper Glen Street Associates, L.L.C., ("Glen Street") for premises located on Route 9 in Queensbury, New York, immediately adjacent to and contiguous with the Toys Parcel (the "Price Rite Parcel"). Price Rite operates a Price Rite discount grocery store in a shopping center known as Price Rite Plaza, located on the Price Rite Parcel. In the Price Rite Lease, Price Rite was granted an exclusive use provision (the "Exclusivity Provision"):

> Except as specifically provided . . . below, Landlord covenants and agrees that during the Initial Term and any Renewal Term, it shall not permit any occupant or occupants of the Shopping Center to sell, and Tenant shall have the exclusive right in the Shopping Center to sell, for off-premises consumption (whether fresh, frozen, canned, bottled, packaged, or otherwise): fish, meat, produce, poultry, baked goods, groceries . . . , dairy and egg products, delicatessen foods and appetizers. Landlord agrees to enforce this exclusive right against other tenants in the Shopping Center using all reasonable legal means.

> Landlord covenants and agrees that neither it nor any of its principal owners or stockholders or directors or officers of their successor or

---

[6] The 2015 amendment was executed by Upper Glen Street Associates, L.L.C., as the successor-in-interest to Albany Public Markets, Inc.

assignees shall lease, rent or permit to be occupied, as a hyper-market, supermarket, mini-supermarket, convenience food store, club store commonly known as warehouse clubs, membership clubs, and/or wholesale clubs (such as, by means of example, but not limitation, BJ's, Price Club, Sam's, Super K Mart, Super Wal-Mart, COSTCO, Wholesale Depot and Carrefour), for the sale of any of the above-described exclusive granted to Tenant under this Lease, or any combination of the foregoing, any premises in the Shopping Center or in any other premises owned, leases, controlled or occupied by Landlord, or their affiliates within a radius of one (1) mile from the Shopping Center.

The Toys Parcel and the Price Rite Parcel (the "Parcels") share a common right of ingress and egress to Route 9. The Parcels also have a shared parking area on property owned by Niagara Mohawk Power Corp. ("Niagara Mohawk"), for which the owners of the Toys Parcel and the Price Rite Parcel share expenses. That area was designated in the Toys Lease as the Utility Parcel. The Toys Lease states that the Utility Parcel, the Toys Parcel and the Price Rite Parcel were subject to an operating agreement entered into in 1972. The Toys Lease requires Toys to pay 50% of any payments due to Niagara Mohawk for the "use and benefit of" the Utility Parcel. The Toys Premises also have a separate parking area apart from the Utility Parcel.[7]

In 2012, Glen Street purchased the Toys Parcel, subject to the Toys Lease. As a result, both the Toys Parcel and the Price Rite Parcel, which the parties have stipulated are "immediately adjacent" to each other, are owned by Glen Street. There is no evidence that the Debtors were involved in Glen Street's purchase of the Toys Parcel or the Toys Lease. No party has claimed that the Exclusivity Provision

---

[7] Stipulation, Ex. C. Dkt. 884.

above has been formally incorporated into the Toys Lease, and the two-page 2015 amendment to the Toys Lease makes no reference to the Price Rite Lease or its terms.[8]

*The assumption and assignment.* The Debtors filed their chapter 11 cases on March 20, 2018. On August 24, 2018, they filed the "Propco I Debtors' Motion for Entry of an Order (I) Establishing Bidding Procedures for the Propco I Leases, (II) Approving the Sale of the Propco I Leases, and (III) Granting Related Relief"[9] which, among other things, requested the approval of the sale and assumption and assignment of certain unexpired leases and of proposed auction and bidding procedures for soliciting and selecting the best offers for various of the Debtors' leases. On September 13, 2018, the Court entered the "Order (I) Establishing Bidding Procedures for the Propco I Leases and (II) Granting Related Relief,"[10] approving the Debtors' modified auction and bidding procedures relating to their revised list of leases attached thereto (the "Auction Leases"). The Toys Lease was one of the Auction Leases.

On September 27, 2018, the Debtors conducted an auction with respect to the Auction Leases, including the Toys Lease (the "Auction").[11] After the Auction, the Debtors designated Aldi, Inc. ("Aldi") as the successful bidder for the Toys Lease and Ocean State Job Lot Stores of NY, Inc. as the back-up bidder.[12] Aldi bid

---

[8] The two-page 2015 amendment deals primarily with rent, brokers, and the term of the Toys Lease.
[9] Dkt. 455.
[10] Dkt. 519.
[11] Dkt. 623.
[12] *Id*.

$3,300,000 for the Toys Lease, and the back-up bid was $2,250,000.[13] On October 5, 2018, Glen Street filed the "Objection of Upper Glen Street Associates, LLC to the Proposed Assignment of Lease, to Aldi, Inc." (the "Objection").[14]

## JURISDICTION

Pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the general order of reference for the U.S. District Court for the Eastern District of Virginia dated August 15, 1984, this Court has subject matter jurisdiction over the Debtors' bankruptcy cases and this contested matter relating to the Debtors' proposed assumption and assignment of the Toys Lease. This is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(A),(N) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

In the Objection, Glen Street raised several theories to support its contention that the assignment of the Toys Lease to Aldi should not be approved. At a hearing on the Objection held on December 11, 2018, the parties announced that the only issue remaining unresolved between the parties and for which they seek a ruling from the Court is whether the Exclusivity Provision in the Price Rite Lease prevents the assumption and assignment of the Toys Lease to Aldi.[15] At the hearing, Upper Glen put forward its concerns as to tenant mix, which the Court will address below.

---

[13] Dkt. 884, ¶ 18.
[14] Dkt. 615, redocketed at Dkt. 657.
[15] Tr. 86:4-7.

6

Assumptions and assignments of leases are governed by § 365 of the Bankruptcy Code, 11 U.S.C. § 365.[16] Section 365(a) provides that a trustee, which includes a debtor-in-possession in a chapter 11 case,[17] may "assume or reject any executory contract or unexpired lease of the debtor." *Id.* However, if there has been a default in an executory contract or unexpired lease, a trustee or debtor in possession may not assume that contract unless it first:

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

Section 365(f) provides that an executory contract or unexpired lease may be assigned if it is first properly assumed pursuant to § 365(b) and if the trustee or debtor-in-possession provides adequate assurance of future performance by the

---

[16] All subsequent references to § 365 or any subsection thereof are to 11 U.S.C. § 365.
[17] 11 U.S.C. § 1107(a).

7

proposed assignee.[18] Section 365(f)(3) gives a trustee or debtor in possession valuable additional rights when assigning executory contracts or unexpired leases, allowing their assignment "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease."[19]

The rights of the trustee or debtor-in-possession to assume and assign are limited if the lease at issue covers property that is located in a shopping center. In that instance, "adequate assurance of future performance" for purposes of both § 365(b)(1) and § 365(f) is defined in § 365(b)(3):

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance--
> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and

---

[18]Section 365(f) provides that:
 (1) Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.
(2) The trustee may assign an executory contract or unexpired lease of the debtor only if--
(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.
(3) Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.
11 U.S.C. § 365(f).
[19] *Id.*

8

its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

Glen Street argues that § 365(b)(3)(C) and § 365(b)(3)(D) prevent the assignment of the Toys Lease to Aldi because (1) the Exclusivity Provision prohibits the assignment of the Toys Lease to Aldi and (2) the assignment of the Toys Lease to Aldi will disrupt the tenant mix in what Glen Street claims is a shopping center. If Glen Street is correct in its assertion that the combined Toys Parcel and the Price Rite Parcel constitute a shopping center, then the Court must determine whether the requirements of § 365(b)(3) have been satisfied.

The Bankruptcy Code does not define "shopping center." The court in *In re Ames Department Stores, Inc.*, 348 B.R. 91, 95 (Bankr. S.D.N.Y. 2006), noted that a multi-factor test is regularly used to determine whether premises constitute a "shopping center" under § 365(b)(3). Factors considered include:

1. A combination of leases;
2. All leases held by a single landlord;
3. All tenants engaged in the commercial retail distribution of goods;
4. The presence of a common parking area;
5. The purposeful development of the premises as a shopping center;
6. The existence of a master lease;
7. The existence of fixed hours during which all stores are open;

9

> 8. The existence of joint advertising;
> 9. Contractual interdependence of the tenants as evidenced by restrictive use provisions in their leases;
> 10. The existence of percentage rent provisions in the leases;
> 11. The right of the tenants to terminate their leases if the anchor tenant terminates its lease;
> 12. Joint participation by the tenants in trash removal and other maintenance;
> 13. The existence of a tenant mix; and
> 14. The contiguity of the stores.

*Id.*, citing *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1087-88 (3d Cir. 1990). The burden is on Glen Street to prove that the lease the Propco I Debtors seek to assume and assign is located in a shopping center. *In re Ames Dep't. Stores, Inc.*, 121 B.R. 160, 163 (Bankr. S.D.N.Y. 1990). *See also In re Goldblatt Bros., Inc.*, 766 F.2d 1136, 1141 (7th Cir. 1985) ("We agree with the courts below that the evidence presented by [the landlord] was insufficient to demonstrate that Goldblatt was a tenant in a shopping center.")

Of the fourteen factors listed in *Joshua Slocum*, the Court finds that several of them are facially satisfied by the facts of this case. In particular, there is a combination of leases, the leases are held by a common landlord, the tenants are engaged in the commercial retail distribution of goods, there is a common parking area and access road, and the stores are contiguous. However, with respect to those elements, there are some particular facts that should be noted.

While the Toys Lease and the Price Rite Lease are now both held by Glen Street, the leases were not held by the same entity until 2012, when the Toys Lease and Toys Parcel were acquired by Glen Street. The Toys Lease

10

was entered into between Toys and Albany Public Markets in 1996. The Price Rite Lease, in contrast, was entered into between Price Rite and John Nigro ("Nigro"), the predecessor-in-interest to Glen Street,[20] in 2002.

As to the existence of a common parking area, the Toys Parcel and the Price Rite Parcel have had a common parking area since the inception of the Price Rite Lease in 2002, ten years before Glen Street acquired the Toys Parcel and Toys Lease. The obligations of Toys and Price Rite with respect thereto did not change when Glen Street acquired the Toys Parcel and Toys Lease. While the existence of a common parking area might be indicative of an intent to create a shopping center, here such intent cannot be inferred, as the common parking area and access road predated the common ownership. Further, there is separate parking located in front of the subject store that is not a part of the Utility Parcel.[21]

Based upon the evidence presented, the Court cannot find that there has been a purposeful development of the Parcels as a shopping center. Rather, the owner of one shopping center purchased real estate that adjoined a shared parking area but did nothing to develop the adjoining parcels as a cohesive single unit. Elements that might indicate a purposeful development are a master lease, fixed hours during which all stores are required to

---

[20] In the Nigro Affidavit, Nigro states that he is "the President of Nigro Companies, the Managing Agent of Upper Glen Street Associates, L.L.C.. . ., successor-in-interest to Albany Public Markets Inc. . . ., Landlord under a lease dated July 1996 . . . with TRU 2005 RE I, LLC . . . successor-in-interest to Toys "R" Us – NY Limited Partnership."

[21] Under the terms of the Toys Lease, Toys was to pay a "common area expense contribution" composed of its pro rata share of the Utility Parcel costs and "the Common Area Expense for all Common Areas on the Tenant's Parcel." Toys Lease, § 3.04(a).

11

Case 18-31429-KLP    Doc 1281    Filed 03/05/19    Entered 03/05/19 16:24:37    Desc Main
                      Document      Page 12 of 17

operate, joint advertising, or the presence of an anchor tenant whose departure would give the other tenants the right to terminate their leases. *See Ames*, 121 B.R. at 164-65; *Goldblatt*, at 766 F.2d 1141. Those elements, four factors in the *Joshua Slocum* test that have not been proven by Glen Street, have not been satisfied with respect to the combined Parcels.

Glen Street points to the case of *In re Sun TV & Appliances, Inc.*, 234 B.R. 356 (Bankr. D. Del. 1999), in which the court found that the premises at issue were in fact part of a shopping center despite the fact that all of the tracts in the shopping center were not acquired at once. However, that case is factually distinguishable from the present case. In *Sun*, the landlord put on evidence that its gradual acquisition of the premises was part of a "purposeful development" that was planned as "an ongoing process with several phases." *Id*. at 362-63. The court concluded that "the Landlord's plans to eventually develop the Sun parcel, albeit prospective in nature, were a factor in the earliest phases of development dating back 20 years. . . ." *Id*. at 363. Here, Glen Street has given the Court no evidence of such a plan.

In short, after analyzing the evidence presented by Glen Street, the Court cannot conclude that the acquisition of the Toys Lease and the Toys Parcel by Glen Street created a shopping center of which the Toys Parcel was a part. Despite the existence of the common parking area and access road, which the Parcels had been sharing for years prior to Glen Street's acquisition of the Toys Parcel, there is nothing to show that the Toys Parcel

and the Price Rite Parcel constitute a shopping center. Other than the parties' stipulated evidence, the only evidence proffered by Glen Street was an affidavit from Nigro (the "Nigro Affidavit"), in which he raises the concern that an assignment to Aldi (1) might cause Glen Street to be in violation of the Exclusivity Provision and (2) will cause there to be "two discount grocers within yards of one another."[22] This does not sustain the imposition of the "shopping center" label, which should be strictly construed,[23] as it limits the rights of a debtor to dispose of property of the estate.

Having determined that the Toys Parcel is not part of a shopping center, the Court now turns to the argument of Glen Street that the assignment of the Toys Lease to Aldi must not be allowed because it would adversely affect the tenant mix. This argument fails. Tenant mix is an appropriate factor to consider only when the subject parcel is located in a shopping center. This is not a shopping center, and therefore concerns as to tenant mix are not germane.

Regardless, even if the Court were to find that the Toys Parcel is located in a shopping center, Glen Street's stated concerns as to tenant mix do not prevent the assignment of the Toys Lease to Aldi. The Court has recently held in *In re Toys "R" Us Property Company I, Inc.*, No. 18-31429, 2019 WL 548643 (Bankr. E.D. Va. Feb. 11, 2019) ("Market Plaza"), that "[i]n order to invoke the protection of § 365(b)(3)(D), a lessor must establish that

---

[22] Dkt. 657.
[23] 3 Collier on Bankruptcy ¶ 365.06[5] (Richard Levin & Henry J. Sommer eds., 16th ed.).

there was an intended tenant mix and that the mix was part of the bargained-for-exchange of the debtor's and other tenants' leases." *Id*. at *6 (quoting *Lasalle Nat'l Trust, N.A. v. Trak Auto Corp.*, 288 B.R. 114, 125 (E.D. Va. 2003), *rev'd on other grounds*, *Trak Auto Corp. v. W. Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237 (4th Cir. 2004)).  The Court has been given scant evidence, contractual or otherwise, to show that Glen Street has sought to maintain or develop a certain tenant mix with respect to the Toys and Price Rite Parcels.  Nigro states in his affidavit that adding Aldi as a tenant in the Toys Parcel would create two discount grocers within yards of one another and create an "unfavorable imbalance in the tenant mix of the combined Price Rite Plaza and Toys R Us. Parcel."[24]  However, Glen Street has not put forth any evidence other than the Nigro Affidavit and the two leases themselves to substantiate that claim.  As pointed out above in the shopping center analysis, there is no operating agreement, no master lease, and no joint advertising that would evidence any master plan for development of the stores or to maintain any particular tenant mix.  In addition, there is nothing in the Toys Lease that would evidence such an intention.  For the Court to hold that a landlord's stated concern as to tenant mix, without more, is sufficient to prevent a debtor's assignment of a lease would be to give absolute veto power to any landlord whose lease a debtor seeks to assume and assign.

---

[24] Dkt. 657.

14

In its objection, Glen Street seeks, in essence, to prevent the assignment by importing the Exclusivity Provision from the 2002 Price Rite Lease into the 1996 Toys Lease and the 2015 amendment thereto.  It argues that if the assignment of the Toys Lease to Aldi is allowed, Glen Street may be in breach of the Exclusivity Provision and thereby liable to Price Rite.  However, there is no evidence that the Exclusivity Provision has been incorporated into the Toys Lease in any way or that the assignment to Aldi would actually be a breach of that provision.  The Court has recently rejected this approach in Market Plaza, stating that "[t]he burden is on [the landlord] to establish the existence of an intended tenant mix, and that requires more than simply demonstrating that it has provided each of its tenants with exclusivity protections." 2019 WL 548643, at *6.

Glen Street also argues that the Court must weigh the benefit to the Debtors against the harm to the landlord.  Glen Street cites the Court's prior decision in In re *Toys "R" Us, Inc.*, No. 17-34665-KLP, 2018 WL 2676680 (Bankr. E.D. Va. May 31, 2018) (the "Paramus opinion") in support of this position.  However, in that case, the Court was faced with a situation in which the debtors sought utilize the provisions of § 365(f) to assign a debtor's lease free and clear of a use restriction contained therein.  In determining that the debtors could make the assignment free and clear of the use restriction, the Court balanced the equities.  In this case, the parties have stipulated that the only issue before the Court is whether the Exclusivity

15

Provision of the *Price Rite Lease* prohibits the assignment of the Toys Lease to Aldi. The parties have not asked the Court to address the effect of any provisions contained in the *Toys Lease*, thus making the balancing approach in the Paramus Opinion inapplicable.

The Court, having found that the Toys Parcel is not part of the shopping center, and having further found that even if the Court were to consider the issue of tenant mix, Glen Street has not carried its burden relative thereto, the Objection will be overruled and the assumption and assignment of the Toys Lease to Aldi will be approved.

A separate order will be issued.

Signed:  March 5, 2019                              /s/ Keith L. Phillips
                                                    United States Bankruptcy Judge

                                                    Entered on Docket: March 5, 2019

Copies:

Michael A. Condyles
Peter J. Barrett
Jeremy S. Williams
Kutak Rock LLP
901 East Byrd Street, Suite 1000
Richmond, VA 23219

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
Emily E. Geier
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C.
Scott Lerner
Asif Attarwala
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Augustus C. Epps, Jr.
Michael D. Mueller
Jennifer M. McLemore
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, VA  23219-3095

Joann Sternheimer
Deily & Glastetter, LLP
8 Southwoods Blvd., Suite 207
Albany, NY  12211

Peter M. Pearl
Spilman Thomas & Battle, PLLC
P O Box 90
Roanoke, VA  24002-0090

James E. Rossow, Jr.
Rubin & Levin, P.C.
135 N. Pennsylvania Street, Suite 1400
Indianapolis, IN  46204