UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:

Toys "R" Us Property Company I,
LLC, et al.,[1]

Debtors.

Chapter 11

Case No. 18-31429-KLP
(Jointly Administered)

# MEMORANDUM OPINION

Before the Court is the "Motion for Entry of an Order Approving the Assumption of Certain Real Estate Assets and Granting Related Relief" (the "Motion") filed by the Propco I Debtors (the "Propco I Debtors" or the "Debtors"). The Debtors seek confirmation that the lease that is the subject of the Motion was assumed pursuant to the Court's earlier order authorizing its sale or, alternatively, that the landlord consented to an extension of the Bankruptcy Code's time limitations[2] within which to assume it. SAICO Gateway Company, LLC ("SAICO"), the landlord, objects to the Motion, contending that the lease was deemed rejected because it was not assumed prior to the applicable deadline. For the following reasons, the Court concludes that the lease in question was timely assumed by the Debtors pursuant to the order approving its sale.

---

[1] An order was entered on April 24, 2018, directing the procedural consolidation and joint administration only of the chapter 11 cases of: Toys "R" Us Property Company I, LLC, Case No. 18-31429-KLP; MAP Real Estate, LLC, Case No. 18-31430-KLP; TRU 2005 RE I, LLC, Case No. 18-31431-KLP TRU 2005 RE II Trust, Case No. 18-31432-KLP; Wayne Real Estate Company, LLC, Case No. 18-31433-KLP, and Wayne Real Estate Holding Company, LLC, Case No. 18-31428-KLP. Dkt. 94.
[2] 11 U.S.C. 365(d). *See infra* text accompanying note 14.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district pursuant to 28 U.S.C. § 157(a) on August 15, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O). The Court may enter a final order in this matter pursuant to 28 U.S.C. § 157(b)(1). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

The Debtors filed their petitions for relief under Chapter 11 of the Bankruptcy Code on March 20, 2018. Pursuant to 11 U.S.C. § 365(d)(4)(A)(i), the Debtors had until July 18, 2018, to assume nonresidential real property leases. On June 4, 2018, the Debtors filed a motion pursuant to 11 U.S.C. § 365(d)(4)(B)(i), seeking to extend the time to assume nonresidential real property leases for an additional 90 days. The motion was granted by the Court by order entered June 28, 2018,[3] thereby extending to October 16, 2018, the date by which the Debtors were required to assume or reject unexpired leases of nonresidential real property (the "Assumption Deadline").

In June of 2018, the Debtors sought entry of an order approving procedures to reject or assume executory contracts and unexpired leases. An order approving those procedures was entered on July 25, 2018 (the "Lease Procedures Order").[4] The Lease Procedures Order authorizes the Propco I

---

[3] Dkt. 270.
[4] Dkt. 393.

Debtors to obtain approval of the assumption of a nonresidential real property lease either by filing a form notice (a "Notice of Assumption") or by filing a separate motion seeking approval of the proposed assumption.

The Debtors and SAICO were parties to a lease for certain real property located in La Mesa, California (the "La Mesa Lease" or "the Lease"). The Debtors have not filed a Notice of Assumption for the La Mesa Lease, and thus, pursuant to the Lease Procedures Order, could only assume the Lease by moving to assume it. In August of 2018, representatives of SAICO and representatives of the Debtors negotiated a purchase agreement (the "Purchase Agreement") whereby an entity or entities to be created by SAICO would purchase the La Mesa Lease for a price of $11 million.[5] On August 30, the Debtors filed a motion seeking approval of the Purchase Agreement (the "Sale Motion")[6] and, on September 13, 2018, the Court entered an order (the "Sale Order") authorizing the sale of the La Mesa Lease, free and clear of all liens, encumbrances, and other interests to Wing Avenue Investment, LLC, the entity created by SAICO specifically for that purpose (the "Buyer").

---

[5] SAICO, through its counsel and representatives, negotiated the terms of the Purchase Agreement, one of which was that an entity or entities to be created by SAICO would be substituted for SAICO as the counterparty to the Debtors. [*See* Preamble to draft purchase agreement, Dkt. 1025, ex. A; ¶ B of Recitals of the executed Purchase Agreement, Dkt. 479]. SAICO's counsel and representatives continued to act on behalf of the counterparty to the Debtors through the point at which the deposit was forfeited.

[6] The Sale Motion recites that "[t]he bases for the relief requested herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia." Dkt. 479, ¶ 4.

The Sale Order includes the following language: "All the requirements of sections 363 and 365 of the Bankruptcy Code have been met with respect to the sale of the Ground Lease" and "The Propco I Debtors have met all requirements of sections 365(b) and 365(f) of the Bankruptcy Code in connection with the sale of the Ground Lease to the Buyer."

The Purchase Agreement expressly provides that the La Mesa Lease will be transferred pursuant to assumption and assignment:

> Transfer of the Premises shall be made pursuant to (a) an assignment and assumption of lease transferring Seller's right and interest under the Ground Lease to Buyer substantially in the form of Exhibit "B" attached hereto and made a part hereof (the "Assignment and Assumption of Lease"); and (b) a quitclaim deed transferring Seller's interest in the Building and other improvements on the Premises to Buyer (the "Quitclaim Deed") substantially in the form of Exhibit "B-1" attached hereto and made a part hereof. . . . Notwithstanding anything else contained herein, . . . Buyer shall accept the Assignment and Assumption of Lease and the Quitclaim Deed without the recordation of such releases . . . .[7]

The Purchase Agreement further states that if the sale is not completed, the Propco I Debtors will be responsible for future rent:

> Notwithstanding the foregoing or anything in this Agreement or the Ground Lease to the contrary, Buyer and Seller acknowledge and agree that Seller shall not be obligated to pay any Rent (as such term is defined in the Ground Lease) to Buyer pursuant to the Ground Lease from the period of time then and after the end of the calendar month in which the Sale Order is entered by the Bankruptcy Court; provided, however, that if this Agreement is terminated following the date on which Rent abates pursuant to this paragraph, then Seller's obligation to pay Rent pursuant to the Ground Lease shall recommence on the date which this Agreement is terminated, but in no event shall Seller be obligated to pay any Rent that accrued between the date on which Rent

---

[7] Purchase Agreement attached to Sale Motion, Dkt. 479 at 35, ¶ 10.

4

begins to abate pursuant to this paragraph and the date that this Agreement is terminated.[8]

The parties agreed to extend the closing date of the transaction, initially scheduled for November 12, to November 20 and then again to November 30, 2018. On November 27, counsel to the Buyer sought a further extension of the closing date. The Buyer failed to close the sale by the November 30 closing date and, pursuant to the Purchase Agreement, forfeited the deposit it had made to the Debtors. On November 29, the Debtors filed the Motion "out of an abundance of caution and in order to leave no doubt as to whether the lease was assumed."[9]

SAICO filed its opposition to the Motion on January 3, 2019. The Court held a hearing on January 24, at which time it received the following documents into evidence: the Declaration of Michael J. Maher,[10] the Declaration of Jared Oakes,[11] and Exhibits A through F attached to the Propco I Debtors' reply brief.[12] The parties subsequently filed proposed findings of fact and conclusions of law.[13]

## DISCUSSION

*Positions of the parties.* The Debtors argue that the Sale Order served as the assumption of the La Mesa Lease. They assert that the sale

---

[8] Purchase Agreement, Dkt. 479 at 38, ¶ 13(i).
[9] Propco I Debtors' Proposed Findings of Fact and Conclusions of Law Regarding the Assumption of the La Mesa Lease," Dkt. 1200, p.7.
[10] Dkt. 1004, ex. A.
[11] Dkt. 1026.
[12] Dkt. 1025.
[13] Dkt. 1199; Dkt. 1200.

transaction was structured as it was expressly for the purpose of avoiding a lease rejection or termination. They request that if the Court finds a separate assumption order is necessary, it also find that the assumption is a sound exercise of the Debtors' business judgment. They propose to cure any default under the Lease by paying the cure amount set forth in the proposed order approving the proposed assumption. They further state that they "have been performing their monetary obligations under the La Mesa Lease" since the Propco I cases were filed and that they will be able to continue doing so until the Lease is assigned to another party, at which time they will provide adequate assurance of future performance from that future assignee. Finally, the Debtors argue that SAICO is estopped from now asserting that the Lease was rejected as of October 16, 2018, as its course of action in continuing to negotiate the terms of the transaction for months after that date "reflects an understanding that the La Mesa Lease was not rejected." Dkt. 1025, p.11.

SAICO argues that the October 16, 2018, Assumption Deadline expired prior to the filing of the Motion. It further points to the language in the Sale Motion that:

> Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Propco I Debtors under the Bankruptcy Code, any foreign bankruptcy or insolvency law, including the CCAA, or other applicable nonbankruptcy law; (b) a waiver of the Propco I Debtors' or any other party in interest's right to dispute any claim, (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; *(e) a request or authorization to assume, adopt, or reject any agreement, contract,*

6

> *or lease pursuant to section 365 of the Bankruptcy Code or pursuant to the CCAA;* (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Propco I Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code, the CCAA, or any other applicable law.

Dkt.479, ¶ 27 (emphasis added). SAICO asserts that the Lease must be deemed rejected because it was not timely assumed and the deadline within which to do so was not extended. It further argues that the Motion is procedurally incorrect, since if the Sale Order serves as an assumption of the Lease, the Motion is superfluous, and if the Sale Order did not serve as an assumption of the Lease, the Motion is untimely and must be denied.

*Section 365 of the Bankruptcy Code.* Assumptions and assignments of leases are governed by § 365 of the Bankruptcy Code, 11 U.S.C. § 365.[14] Section 365(a) provides that a trustee, which includes a debtor-in-possession in a chapter 11 case,[15] may "assume or reject any executory contract or unexpired lease of the debtor." *Id.* Section 365(f) provides that an executory contract or unexpired lease may be assigned if it is first properly assumed pursuant to § 365(b) and if the trustee or debtor-in-possession provides adequate assurance of future performance by the proposed assignee.[16]

---

[14] All subsequent references to § 365 or any subsection thereof are to 11 U.S.C. § 365.
[15] 11 U.S.C. § 1107(a).
[16] Section 365(f) provides that:
　(1) Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

7

Section 365(d)(4)(A) provides that an unexpired lease of nonresidential real property under which a debtor is the lessee shall be deemed rejected if the debtor does not assume or reject the unexpired lease within 120 days after filing or before plan confirmation.  Section 365(d)(4)((B) provides that a court may extend the period on the motion of the debtor or lessor for cause.  The Court ordered an extension of the Assumption Deadline in this case to October 16, 2018.

*Analysis*.  The Court finds that the September 13, 2018, Sale Order, when considered in light of the surrounding circumstances, necessarily functioned as an assumption of the La Mesa Lease.  First, the Court notes that SAICO's reliance on the provision of the Sale Motion that nothing in the motion should be interpreted as "a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code" is unavailing, as the Sale Order itself provides that "[t]o

---

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if--
    (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
    (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.
(3) Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

11 U.S.C. § 365(f).

8

the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern." Therefore, the Court's focus is properly on the Sale Order and not the Sale Motion.

Even if the Court were to consider the terms of the Sale Motion, the proposed sale order, which was attached to the Sale Motion and thus incorporated therein, specifically recites that "[a]ll the requirements of sections 363[17] and 365 of the Bankruptcy Code have been met with respect to the sale of the Ground Lease," and contains the Court's finding that "[t]he Propco I Debtors have met all requirements of section 365(b) and 365(f) of the Bankruptcy Code in connection with the sale of the Ground Lease to the Buyer."[18]  SAICO did not object to the Sale Motion or appeal the entry of the Sale Order.

In the "Relief Requested" portion of the Sale Motion, the Debtors requested:

> entry of an order, substantially in the form attached hereto as Exhibit A . . . (a) approving the sale of that certain lease dated November 21, 1996 . . . including all right, title and interest in the building, improvements and personal property located at 8165 Fletcher Parkway, La Mesa, California . . . free and clear of all liens, claims, encumbrances, and other interests . . . pursuant to that that certain real estate purchase agreement . . . by and between TRU 2005 RE I, LLC (the "Seller") and WING AVENUE

---

[17] 11 U.S.C. § 363.
[18] Section 365(b) provides that a debtor may assume an executory contract or lease if certain requirements are satisfied, and § 365(f) provides that an executory contract or lease may be assigned "notwithstanding a provision . . . the prohibits, restrict, or conditions the assignment of such contract or lease.."

9

>   INVESTMENT, LLC (the "Buyer") attached hereto as Exhibit B
>   and (b) granting related relief.

The heart of SAICO's objection is that the actual words "assume and assign" are not used in the section of the Sale Motion titled "Relief Requested" or in the Sale Order. However, the section of the Sale Motion titled "The Proposed Sale" summarizes the Purchase Agreement, including its closing requirements, which include the "recordation of the Sale Order, the Assignment and Assumption of Lease and the Quitclaim Deed (in that order), in accordance with the terms and conditions of the Purchase Agreement." This comports with the actual terms of the Purchase Agreement, which is attached to the Sale Motion. Section 13 of the Purchase Agreement, which was executed by both the Debtors and Buyer Wing Avenue Investment, LLC, reflects the closing requirements recited in the Sale Motion. In addition, there are multiple references to assignment and assumption in the Purchase Agreement.[19] The Sale Order approves the Purchase Agreement and gives the Debtors the ability to "take any and all actions necessary or appropriate to consummate the Purchase Agreement."

---

[19] See § 10 ("Transfer of the Premises shall be made pursuant to (a) an assignment and assumption of lease …"); § 2(e) (the "Ground Lease … is to be assigned to Buyer pursuant to the Assignment and Assumption of Lease (defined in section 10)"); § 11 (twice referencing "counterparts of the Assignment and Assumption of Lease"); § 13 (multiple references to "the Assignment and Assumption of Lease"); "List of Schedules and Exhibits (referencing "Exhibit 'B'" as "Assignment and Assumption of Lease").

10

Inspection of the Purchase Agreement reveals that the transaction consisted of two parts, (1) the assumption and assignment of the Lease and (2) the separate sale of the building and other improvements on the premises:

> The parties agree: (i) that the entire Purchase Price is allocated to the lessee's interest under the Ground Lease, which is to be assigned to Buyer pursuant to the Assignment and Assumption of Lease (defined in Section 10); and (ii) none of the Purchase Price is allocated to the Building and other improvements on the Premises, which are to be conveyed to Buyer at the Closing pursuant to the Quitclaim Deed ("defined in Section 10).

Dkt. 479, § 2(e). The Purchase Agreement reflects that the parties structured the transaction to include both the assumption and assignment of the Lease and the sale of a building and other improvement to the subject real estate.[20] Consistent with an understanding that the Lease was to be assigned, the list of schedules and exhibits that were to be attached to the Purchase Agreement included an "Exhibit B," which was listed as "Assignment and Assumption of Lease." Upon careful review of the Purchase Agreement, it is inconceivable that the parties to this highly negotiated[21] and sophisticated transaction did

---

[20] The actual Lease is not a part of the evidence admitted. However, the Purchase Agreement refers to the lease as a "ground lease," which is consistent with the structuring of this transaction. "A *ground lease* is usually a long-term lease of a vacant parcel of land or a previously developed property, which requires the tenant to construct new or additional improvements to maximize its value." Stuart M. Saft, 1 Commercial Real Estate Leasing § 22.1 (2d ed. Supp. 2018).

[21] *See* Exhibits A through F, attached to the Debtors' reply at Dkt. 1025 and admitted into evidence at the January 24 hearing, revealing the extensive participation of Michael J. Maher, counsel to SAICO and Wing Avenue, in the drafting of the documents. Mr. Maher "represented first SAICO and then its affiliate, Wing Avenue Investment, LLC, in connection with the Real Estate Purchase Agreement . . . ." Dkt. 1004, Ex. A.

11

not, in seeking permission to enter into the Purchase Agreement, also seek the Court's approval of the assumption and assignment of the Lease.

Other evidence supporting the Debtors' assertion that the Sale Order was an approval of the assumption and assignment of the Lease includes Exhibits A through F attached to the Propco I Debtors' reply brief. Those exhibits illustrate the involvement of SAICO in the formulation of the Purchase Agreement, including the revision of § 2(e) and the revision of § 10, which provides that "[t]ransfer of the Premises shall be made pursuant to (a) an assignment and assumption of lease . . . ."

The Court also notes its previous decision in *In re Zota Petroleums, LLC*, 482 B.R. 154 (Bankr. E.D. Va. 2012). While the issue in that case concerned the rights of a sublessee, the dispute arose because the sale contract between the chapter 7 trustee and the purchaser included the assumption and assignment of leases. The purchaser argued that the transfer of the assets at issue was free and clear of any claims, pursuant to § 363(f) of the Bankruptcy Code, which provides that a trustee may sell property of a debtor "free and clear of any interest in such property of an entity other than the estate." The Court was faced with determining whether the sublessee protections of § 365(h) had been extinguished by the unitary nature of the sale contract:

> The court, in evaluating the arguments put forth by the parties, first examines the transactions among the parties. It seems beyond dispute that the trustee and [the purchaser], in structuring the transaction at issue, intended to transfer all of the

12

assets of debtor and all of the interests of the debtor in the leases and executory contracts to [the purchaser]. The Sale and Assumption Motion and the order approving it were executed to combine the sale and the assumption and assignment aspects in one document. The APA and the order approving the final sale and the assumption and assignment were structured similarly, with all elements of both sale and assumption and assignment being combined in a single document.

Regardless of the unitary nature of the documents, however, the documents are all quite specific that certain assets were to be sold and certain leases and executory contracts were to be assumed and assigned. Schedule 1 attached to the order approving the sale and assignment listed the cure amounts required for sixteen leases and executory contracts . . . . The order, as noted above, provided that [the purchaser] would be responsible for payment of the cure amount.

*Id*. at 158-59. The Court then examined those cases addressing the tension between the two statutory provisions, determining that:

*the dual nature of the transaction, while perhaps intended by the buyer and seller to be a single transaction, must govern.* The transaction was titled as a sale free and clear and an assumption and assignment, and all parties had notice therefore that the provisions of § 365 were thus implicated. Further, the APA itself contained an Exhibit listing the leases to be assumed and assigned and giving cure amounts, and the sublease . . . was rejected pursuant to the provisions of § 365. Thus, the assumption and assignment must be considered as such and governed by the provisions of § 365, including 365(h). Therefore, the rights of [the sublessee] under § 365(h) survive the transaction.

*Id*. at 164 (emphasis added).

The Court reaches the same conclusion in this case. While the Purchase Agreement was not specifically titled a "Sale and Assumption," it was similar to the *Zota* contract in all other aspects. It proposed cure amounts, it included references to § 365, it provided for the recording of

13

assignments, and all parties knew of the dual nature of the transaction. In addition to the factors listed in *Zota*, the Court in this case has evidence of SAICO's involvement in the creation of the Purchase Agreement containing the assignment provisions. Further, in November 2018, the Debtors paid $100,000 to extend the closing deadline, and parties later discussed the Debtors' offer to pay an additional $50,000 deposit in exchange for a further extension of the sale closing date, neither of which would have been necessary if the Lease had been rejected as of the October 16 Assumption Deadline. Dkt. 1025, Ex. F. This is consistent with the provision of the Purchase Agreement that the Debtors' obligation to pay rent would recommence if the sale were not consummated.

The Court notes that at least one court, in approving the sale of a debtor's executory contract, has found that a separate assumption motion is unnecessary. *See In re Specialty Foods of Pittsburgh, Inc.*, 91 B.R. 364, 376–77 (Bankr. W.D. Pa. 1988) ("When, as in this case a motion to sell and a motion to assume and sell would have the identical effect and when the procedural safeguards are the same, the motion to sell is sufficient and a motion to assume and sell would be superfluous . . . . It would be counterproductive to require the Trustee and an overburdened Bankruptcy Court to duplicate the effort, time and expense involved in filing two separate motions, providing notice twice, and conducting two separate adjudications to dispose of one estate asset simply because the asset may be characterized as

14

an executory contract.  It would be equally nonsensical to require the Trustee to use the technical term 'assume' in a motion to sell in order to have the sale before the court in a confirmable posture. … [T]his court holds that the sale of executory contracts under the facts at bar is confirmable notwithstanding the fact that the Trustee did not file a separate motion to assume or use the word 'assume' in his motion to sell.").  The factors guiding the Court's decision in *Specialty Foods* are present in this case.

The Debtors have argued that SAICO should be estopped from arguing that the Lease has been rejected.  Because the Court has found that the Sale Order approved the assumption and assignment of the Lease, it is unnecessary for the Court to address the estoppel argument, and it is also needless for the Court to address the larger legal issue of whether an order allowing the sale of an estate asset necessarily approves the assumption and assignment of that asset.  For the same reason, the issue of whether SAICO tacitly consented to an extension of the time within which to assume or reject the Lease is moot.

Finally, the Court is not persuaded by the notice arguments set forth by SAICO.  The evidence is clear that SAICO was a participant in every aspect of the transactions at issue herein.  Among other things, the same attorney represented both SAICO and the Buyer in the transaction at issue and participated extensively in its structuring.[22]  The Court has been

---

[22] *See* Declaration of Jared Oakes, Dkt. 1026; Declaration of Michael Maher, Dkt. 1004, Ex. A.

15

presented with nothing that suggests that SAICO was unaware of the details of this transaction and rejects the suggestion that SAICO did not have proper notice through the entity it created.

Based upon the record and its analysis of the law, the Court finds that the Sale Order approved the assumption and assignment of the La Mesa Lease. As pointed out by SAICO, the separate Motion for approval is unnecessary. However, in order to provide clarity, the Court will grant the Motion. A separate order will be entered concurrent with the issuance of this opinion.

Signed: June 19, 2019

/s/ Keith L. Phillips
United States Bankruptcy Judge

Entered on Docket: June 19, 2019

Copies:

Michael A. Condyles
Peter J. Barrett
Jeremy S. Williams
Kutak Rock LLP
901 East Byrd Street, Suite 1000
Richmond, VA 23219

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
Emily E. Geier
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C.
Asif Attarwala
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654